## Wistar *versus* Scott.

1. Under a devise of a contingent remainder, upon the determination of a precedent life estate, to "the male issue then living of testator's son R."—R. taking no interest, and the testator's intent being unexplained by the context—the words "male issue" &c., are words of purchase designating a class of devisees, to wit, all the lineal descendants of R., who are males, living at the determination of the life estate; and such male lineal descendants take in equal shares, whether they be of the same generation or not, and whether they trace descent from R. through males or through females.

2. Testator devised certain real estate to his two daughters and the survivor of them for life, remainder "to the male issue then living of my son R., their or his heirs and assigns in fee," and in default of such issue then living, then to all the children of testator's said two daughters and of his said son R. in equal parts. Testator's son R. was not married until after testator's death. Upon the termination of the life estate there were living two sons of R., and several grandsons of R., who were sons of daughters of R.

   *Held*, that the said grandsons of R. were entitled, under the above devise, to share equally, per capita, with the said two sons of R.

January 28, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term, 1883, No. 172.

Ejectment, by John M. Scott, Lewis A. Scott Jr., a minor, by his guardian Lewis A. Scott, and Alexander H. Scott, a minor, by his guardian Lewis A. Scott, against Richard Wistar and William Lewis Wistar, and others tenants in possession of said Richard and William Lewis Wistar, for certain premises in the city of Philadelphia. Plea not guilty.

The following case stated was filed:

It is agreed that in the above action the following case be stated for the opinion and judgment of the Court, with like effect as if the same were found by a jury as a special verdict; and with the right to any party in the cause to have a writ of error to the Supreme Court.

[Wistar v. Scott.]

All parties to the action claim through and under Richard Wistar, late of the City of Philadelphia, who died in the month of June, 1821, seised in fee simple of the real estate and premises described in the writ of ejectment in this case.

The said Richard Wistar became the purchaser in fee of said premises before the making of his last will and testament, namely by deed from George Clymer and wife to him, dated February 5th, 1799, and recorded August 14, 1800, in Deed Book E. F. No. 4, page 141, &c.

The said Richard Wistar left his last will and testament in writing, dated the 24th day of February, 1816, with a codicil thereto, dated the 16th day of January, 1819, both duly proved at Philadelphia on June 25th, 1821, and registered in the office of the Register of Wills for the City and County of Philadelphia, copies of which said will and codicil are hereto annexed and marked " Exhibit A," and are to be taken as part of this case stated.

The premises described in the writ in this case, the title to which is in controversy in this action, are the same which are designated and described in the said testator's will as " All that my lot or piece of land called Prospect Hill containing about six acres and a half, and all the buildings and improvements thereon, being the same premises which I purchased of George Clymer, in Penn Township on Poplar lane, bordered by ground of George Roberts, the Widow Masters and Edward Bonsall, together with the appurtenances."

The said testator's son Richard, on the 23d day of June, 1824, married Hannah O. Lewis. He survived his said wife, and died the 3d day of November, 1862, leaving five children born to him of said marriage, namely:

1. Sarah Wistar, who first married Dr. Joseph Hopkinson, who died leaving the said Sarah surviving, and she has since married and is now the wife of James M. Gillilan.

2. Rachel L. Wistar, who married Alexander E. Harvey, and she and her husband are both living.

3. Richard Wistar, one of the defendants.

4. William Lewis Wistar, another of the defendants.

5. Fanny A. Wistar who married Lewis A. Scott, both she and her husband are still living.

Catharine Wistar and Sarah Wistar, daughters of the said testator, to whom he devised by his will an estate in the aforesaid premises for their joint lives and to the survivor for her life, as therein expressed, are both dead without issue and unmarried. The said Catharine Wistar died in the year 1822, leaving her sister Sarah Wistar surviving, and the said Sarah Wistar died on the 21st of September, 1866.

The said devisees for life held possession of the said prem-

ises during their joint lives, and the said Sarah, as the survi-vor of them, held sole possession thereof after her sister Catharine's death until her, the said Sarah's death.

·At the death of the said testator's daughter Sarah Wistar, there were in being the following named sons and grandsons of Richard Wistar, the son of the testator, to wit:

1. Richard Wistar, born December 14th, 1829.

2. William Lewis Wistar, born March 25th, 1831.

[The above named Richard Wistar and William Lewis Wistar are two of the defendants, and are the only sons of the said testator's son Richard.]

3. Richard W. Hopkinson, born July 21st, 1862.

[The last named was a grandson of the said testator's son Richard, being the child of said Sarah Hopkinson (born Wis-tar), a daughter of said testator's son Richard; which said Sarah married Dr. Joseph Hopkinson, by whom she had issue this son Richard W. Hopkinson above named. The said Joseph Hopkinson, the father of said Richard died, leaving his said wife surviving, who has since intermarried, and is now the wife of James M. Gillilan.]

4. John M. Scott, born September 19th, 1858, one of the plaintiffs.

5. Lewis A. Scott, Jr., born January 30th, 1864, another of the plaintiffs.

6. Alexander H. Scott, *en ventre sa mere* at the death of testator's daughter Sarah Wistar, and born December 25th, 1866, the other of the plaintiffs.

[The above named John M. Scott, Lewis A Scott, Jr., and Alexander H. Scott are grandsons of the said testator's son Richard, being the children of Fanny W. Scott (born Wistar), a daughter of the said testator's son Richard, which said Fan-ny married Lewis A. Scott, Esq., by whom she had issue the three male children last above named, living at the death of said testator's daughter Sarah Wistar.]

The above named Richard W. Hopkinson, died intestate, on the 30th day of December, 1881, leaving no issue, but leaving a widow Lillie Hopkinson, and leaving his mother, the said Sarah Gillilan (born Wistar), surviving.

All the others of the male descendants as above designated of said testator's son Richard, who were living at the death of said testator's daughter Sarah Wistar, are still living.

The above named Rachel L. Harvey, wife of Alexander E. Harvey, and a daughter of said testator's son Richard, had issue one son, namely Clifford Harvey who was born alive on the 20th day of March, 1866, and who died on the following day, March 21st, 1866.

The above named Fanny W. Scott, wife of Lewis A. Scott,

and daughter of said testator's son Richard, had issue one other son, in addition to the plaintiffs above named, namely Richard W. Scott, who was born on the 21st day of October, 1859, and died September 1st, 1860.

The defendants Richard Wistar and William Lewis Wistar, at and immediately after the death of said testator's daughter Sarah Wistar, took possession of the aforesaid real estate under claim to be entitled to the whole thereof under the limitations and provisions of the said testator's will. And have ever since, by themselves and by tenants holding under them, retained the exclusive possession thereof, and taken as well the rents and profits thereof as also certain damages awarded for opening public streets through the same; and have paid the taxes and certain municipal charges thereon.

No suit by anyone claiming under the above named testator has ever been brought contesting the right of the said defendants, Richard Wistar and William Lewis Wistar, to such exclusive possession until the present action was brought.

The other defendants are parties who claim under them, the said Richard Wistar and William Lewis Wistar, and are in actual possession of parts of said premises by lease, demise or grant from them only.

If the Court, under the facts above stated, is of opinion that the plaintiffs, or any of them, are entitled to recover from the defendants any share or portion of the real estate above mentioned, then judgment is to be entered in favor of said plaintiffs, or such of them as shall be decided to be so entitled to recover, that they have and recover from the defendants such share or shares, portion or portions of the said premises as the Court shall adjudge of right to belong to such plaintiffs.

But, if the Court shall be of opinion that neither the plaintiffs, nor any one or more of them, are entitled to recover any share or portion of the aforesaid real estate, then judgment to be entered in favor of the defendants. The costs to follow the judgment and any party or parties, as aforesaid, to be entitled to a writ of error.

The following is the only material portion of the will of Richard Wistar, referred to in the foregoing case stated:

" *Item.* I do hereby give and devise unto my said daughters, Catharine and Sarah, all that my lot or piece of land called Prospect Hill, containing about six acres and a half, and all the buildings and improvements thereon, being the same premises which I purchased of George Clymer, in Penn township, on Poplar lane, bounded by ground of George Roberts, the Widow Masters and Edward Bonsall, together with the

appurtenances, to hold to them for and during all the term of their natural lives and the life of the survivor of them, and from and immediately after the decease of the survivor of them, I give the same unto the male issue then living of my said son Richard their or his heirs and assigns in fee, but if no such issue shall then be living, in such case I give the same unto all the children of my said daughters Catharine and Sarah, and my said son Richard, their heirs and assigns in equal parts according to the number of them."

The Court, after argument, entered judgment on the case stated for the plaintiffs for three undivided sixth parts of the premises in question, ALLISON, P. J. filing the following opinion :—

This is a case stated in an action of ejectment, which presents for the opinion of the court a question, the true answer to which requires a construction to be placed on the will of Richard Wistar, who died in Philadelphia in the year 1821.

The portion of the will which gives rise to the present controversy is as follows : " I do hereby give and devise unto my said daughters, Catharine and Sarah, all that my lot and piece of ground, called 'Prospect Hill,' containing about six acres and a half, and all the buildings and improvements thereon, . . . . . . to hold to them for and during all the term of their natural lives, and the life of the survivor of them, and from and immediately after the decease of the survivor of them I give the same unto the *male issue* then living of my said son Richard, their or his heirs and assigns, in fee ; but if no such issue shall then be living, in such case I give the same unto all the children of my said daughters, Catharine and Sarah, and my said son Richard, their heirs and assigns, in equal parts, according to the number of them."

It is clear that after the gift of an estate for life to the two daughters of the testator, who were then unmarried, and to the survivor of them, the limitation of the remainder is contingent. The will was executed in 1816, to which a codicil was added in 1819, and Richard Wistar, son of testator, did not marry till 1824. The gift to the male issue of Richard, if he should have such issue, was therefore to a class not having any existence when the will was made, or at the death of the testator in 1821.

Nor is the fact to be overlooked that no estate or interest in the land in question was given to Richard, whose male issue, if there should be any, were to take this remainder ; they therefore did not take the land devised through him or from him in any way.

The plaintiffs contend that the words " male issue " as they

were used by the testator to express his intention, must be interpreted as meaning all the male descendants of the testator's son Richard, who were living at the time of the death of the survivor of the two daughters, Sarah and Catharine, which happened on the 21st of September, 1866, whether such males were born of males or females.

The defendants, who are the two grandsons of the testator, and children of Richard Wistar, son of the testator, contend that the meaning of the words "male issue," as they stand in the will, is "children," and not descendants generally, or that they mean issue tracing through males only.

The defendants admit that the law is, as it is stated in Leigh *v.* Norbury, 13 Vesey, 340, that the word issue, when found in a will, and where it is unconfined by any indication of contrary intention, includes all descendants. Intention is required for the purpose of limiting the sense of that word and restraining it to "children." The defendants, however, insist that in its popular sense it is used to mean "children," citing in support of this view Wells *v.* Ritter, 3 Wharton, 208; Ralph *v.* Carrick, L. R. 11, Ch. Div., 873, in the former of which Mr. Justice KENNEDY says: "In its popular sense, however, I think it can scarcely be doubted but it is used to mean children." And in the latter case the court says: "In ordinary parlance the *primâ facie* meaning of issue is children, in legal documents its *primâ facie* meaning is descendants." The defendants also cite 1 Maddocks, 208; 5 De Gex & Smale, 737; 12 Beavan, 97, and L. R. 9 Q. B. Div., 643, where the w rd issue was construed to mean children. But in each of these cases, as in every instance in which a will is to be interpreted, the entire contents of the instrument were considered together, and the particular portions of the will upon which controversy hinged were construed in the light of and in connection with every other portion of the testamentary paper. At the same time the established principles of interpretation of last wills were kept steadily in view, and to which full effect was given. In no other way can the intentions of a testator be ascertained and carried out, and the law in its application to last wills and testaments be maintained.

That this course was followed in the several cases referred to above, will appear by a careful examination of each one of them. The endeavor was, as it always should be, to ascertain the intention of the testator; and in the most recent of them, Morgan *v.* Thomas, 9 Q. B. Div., 643, JESSEL, Master of the Rolls, decided that the word "issue," as used by the testator, meant children. The testator devised land to his eldest son, L., "for life, and after his decease to his lawful issue, and their heirs forever, if any," and "if he should die without

leaving *any children* born in wedlock," then to testator's son, E., and his heirs.

In his search after the meaning of the testator the Master of the Rolls says : " We must see what he means by ' lawful issue,' and what he means by ' children.' . . . . . The word children has, both in law and in common parlance, only one meaning, though you may by a context show it is improperly used ; that it is written by mistake for descendants or something else. But the word ' issue ' has two meanings—it may mean ' descendants,' and it may mean ' children ; ' the common use of the word in ordinary parlance being ' children,' though in legal parlance its proper meaning is ' descendants.' You require a context of a different character to show that the testator has made a mistake in writing one word for another, from what you do when you wish to ascertain which of two meanings that the word properly bears is to be affixed to it. Looking at it in this way, it appears to me that in this case we must read ' issue ' as meaning ' children.' " The last clause of the paragraph " if he should die without leaving *any children*," shows most plainly what the testator intended by the preceding words " lawful issue." Having given the estate after the termination of the life estate to the son L., and to L.'s lawful issue, he then provides that if he should die without leaving children born in wedlock, then to another son and his heirs, shows that lawful issue could have no other meaning than *children* of L. born in wedlock.

So also in Bryan *v.* Mansion 5 De Gex & Smale 737, the bequest was for life to a niece, with remainder to her "issue" and a subsequent direction to pay the same amongst her children, with a provision for maintenance for children during minority ; it was held that issue meant children. It was abundantly clear that the words issue and children were used interchangeably to indicate who were to take the property on the happening of the contingencies upon which it was to vest. The intention was not doubtful, and the will was interpreted accordingly. So, also, it may be said of the remaining cases cited by the defendants under this head of their argument. The intention of the testator, as gathered from a consideration of the entire will, controlled in the interpretation of each one of them, recognizing also the full force of the principles which in England have been held to apply to the words issue and children, when used in a testamentary instrument.

The English cases on which defendants rely do undoubtedly show that the " male issue " or "issue male," in each one of them, were restricted in their meaning to male children, or to male descendants claiming through males ; yet in Oddie *v.* Woodford, 3 Myl. & Cr., 584, which may be regarded as the

leading case on this question, decided first by Lord ELDON after great hesitation in 1821, and affirmed in the House of Lords in 1825, Lord ELDON said: "It does not follow that because the estate was not to descend to females or to males claiming through females, therefore the first estate (that is, the estate to be conveyed by trustees) was not to be limited to a male claiming through a female; that consequence does not follow; it is a question on the whole intent and meaning." The words "eldest male lineal descendants" were construed, in the connection in which they stood, to mean that only males claiming through males could take.    The decision of both Lord ELDON and the House of Lords was based mainly on the effect of the word "lineal," but other considerations were allowed to weigh in reaching the conclusion as to the true interpretation of the will.    It was considered important that there was a provision in the instrument for the use of the name Thelluson by the heirs, and that there was a supposed general intent to exclude the female line.  ALEXANDER, C. B., in assigning reasons for the affirmance of the opinion of Lord ELDON, says : " The word lineal was introduced, as it appears to us, in order to intimate the testator's desire, that the person to nominate should be the male descendant of a son in the male line.

The authority of this case may be regarded as exercising a controlling influence on those which followed it.    The Master of the Rolls, in the latest of these cases, Lywood v. Kimber, 29 Beavan, 38, says : " I should be unsettling the settled rules of the court if I gave any other meaning to these words, unless I found on the face of the will something to show that he (the testator) intended to use them in another sense."

The rule, as it established in England on the authority of these cases, is asserted by Hawkins and by Theobald in their separate treatises on wills.    Jarman, on the other hand, seems to maintain that the true canon of interpretation of testementary instruments applicable to a case of this character is that for which the plaintiffs contend.    In the case of Beckam v. De Saussure, 9 South Carolina Rep., 546, it is thus stated : " The word issue when used as a word of limitation is equivalent to heirs of the body, and issue male, like heirs male of the body, define an estate which, according to the rules of inheritance, can descend only to males, whose descent from the proposed ancestor has been wholly through males.    But where issue is not used as a word of limitation, its natural and primary meaning, without explanation, is descendants in every degree, whether heirs or not, and, in like case, the like meaning of issue male, is descendants that are males."

Hawkins, however, concludes that the case of an heir male

[Wistar *v.* Scott.]

of the body who takes by purchase, is, by the authority of the cases cited, brought in conformity with the general rules of construction; and Theobald holds, that it appears to be concluded by authority that, even in the absence of the word "lineal," the heir male taking by purchase must claim through males.

Those who take under the disputed clause of the will of Richard Wistar take as purchasers; they constitute a class whose right is derived, not through Richard Wistar, the son of the testator, who took no interest in the Prospect Hill property, and who is only designated as the person whose male issue are to take after the expiration of the life estate given to the two daughters. This fact is not to be overlooked, as it has an important bearing upon the question in dispute. It takes out of the controversy every inference which, it might be argued, was a legitimate deduction from or a legal consequence of the fact that an estate or interest was first given to the person whose issue take the property in remainder under the devises or bequests of the will. They cannot, therefore, by analogy, be likened to devisees or legatees who, under the terms of a will take an estate in remainder, first given for life or in fee to the person whose issue are named as the donees of the property, or likened to legal succession in right of the parent. In this case those who take under the will take direct from the testator, and not through or from any one to whom a precedent estate had been given.

In some of the cases cited of bequests of legacies, where a precedent estate or interest was given to the person whose issue were to take the property in remainder, it has been held to restrict the definition of issue to children; but the contention of the plaintiffs is, that this has never been done in any case of a devise of real estate where the ancestor took no estate or interest in the premises. Nor do we understand the defendants as disputing this proposition.

The onus is on the defendants to show that the word issue, as used by the testator in his will, is to be taken in any other sense than in its recognized meaning, in which sense it is broad enough to include great grandchildren. To maintain their contention they must make out, from the context of the will, that the words "male issue" are restricted in their meaning to children or males claiming through males. Judge WOODWARD, in Miller's Appeal, 2 P. F. Smith, 116, shows that the rule, as we have stated it, is the accepted law of Pennsylvania as well as of England.

In 2 Williams on Executors, 999, it is said, that when the description "issue" is employed in a will as a word of purchase, it will, in its ordinary import, comprise all those who

can claim as descendants from or through the person to whose issue the bequest is made; that is, grandchildren, great-grand-children, as well as children; and in order to restrain the usual sense of the word, a clear intention must appear upon the will. Our own decisions in support of this proposition are Miller's Appeal, 2 P. F. Smith, 113, cited above; Coyle's Appeal, 2 Norris, 242.

We therefore rest upon the propositions, first, that there being no interest or estate in the Prospect Hill property given to Richard Wistar, whose male issue were the donees of the property, the devise is not to be likened to legal succession in right of the parent. This, therefore, may be regarded as out of the way. In the second place, interpreting the word issue in its natural and ordinary import, there is nothing in the con-text of the will which shows that the testator intended to restrict the gift to the sons of his son Richard, or to their issue male, claiming through males.

The defendants read this will differently, and contend that the context does show an intention to restrict the meaning of "male issue" of Richard to children or to males claiming through males, because the testator directs that on failure of the first contingency, *all* the children of Richard, Catharine and Sarah, shall inherit the property in equal parts. But this, it seems to us, begs the question, and satisfies the con-tention of the defendants only on their showing, by that which appears in the will, by what the testator has himself said, that he intended the words male issue as words of limi-tation to the sons of Richard. Failing to show this, the con-clusion follows that he intended male descendants generally, and not that he intended to limit the inheritance to Richard's sons, as he has not in any way indicated an intention to restrict the usual and ordinary signification of the words "male issue," the meaning which the law in such cases attaches to them is decisive of the question. All doubt would have been removed had the testator said, I give the property to the sons of Richard or to the male issue of Rich-ard who do not trace their descent through females. The language employed to express the ulterior contingent limita-tion of the estate, in our judgment, does not shed any light on the intentions of the testator.

The defendants also argue, that the only possible intent of the testator was to keep the property in the line of his name, and ask, if the testator did not have in his mind the idea of the issue being male issue in its origin, why did he select a male, his son Richard, as the stock?

It is much easier to ask the question than to find a satisfac-tory answer to it. If such answer, whatever it may be, is not

9 OUTERBRIDGE.—14.

[Wistar *v.* Scott.]

found in the will itself, we have no right to substitute for what the testator has written what mere imagination may suggest as what he most probably intended to write. We cannot safely substitute conjecture and plausible imputation of motive, as is said in Beckham *v.* De Saussure, in lieu of explanation. If we do, there will be no safety in relying upon principles or precedents in the construction of wills. We can know the testator's motives and purposes only from his expressions.

But if the view pressed by the defendants is the correct one, that he intended to keep this property in the line of his name, the question may very well be asked, if this is so, what motive could the testator have in selecting this small portion of a large estate, much of the property devised consisting of valuable real estate in this city, and extensive farm properties in various portions of the Commonwealth, and desire to stamp this fragment alone with the name of Wistar, subjecting it, at the same time, along with the other portions of the estate, to the risk of sale by the devisees to persons who were not of the blood, and who did not even bear the name of Wistar. This, in our judgment, does not present a satisfactory conjecture even of the motive of the testator for devising this portion of his estate to the male issue of his son, and if it is plausible as a conjecture, this is all that can be claimed for it, as there is nothing to show that such was indeed his purpose. He has not chosen to give an explanation of his own mind on this subject, and it must therefore remain as he has left it in his will, and be interpreted by the established rules and principles of law applicable to a devise of real estate such as we find this to be ; there being no intention apparent in the will to restrain the usual and commonly accepted import of the word issue, it must be held to comprise all of the male issue or descendants of the testator's son Richard who were living at the death of the survivor of his two daughters, whether they claim through males or through females.

In reaching this conclusion, we give weight to the views which are stated in the argument of the plaintiffs, that in all cases of doubt, wills are to be construed with reference to our own institutions and in closest analogy to our own intestate laws, to the spirit and genius of our own institutions, the tendency of our legislation, and the customs and habits of our people, to these are we to look rather than to the views the English judges, who have ingrained in them those peculiar notions which grow out of long-established laws and usages, giving preference in descents to the eldest son, preferring males to females, and yielding deference to the privileges of the nobility and landed gentry of the kingdom.

[Wistar v. Scott.]

It cannot, in the nature of things be, that such considerations as these did not weigh in favor of the construction placed by the English judges on wills, in which the words "male issue" or "issue male" were presented for their consideration and decision. It falls in with many of the vital rules of inheritance, upon which rest, in no small degree, the organization of society and the stability of government in England. Principles which, it is needless to say, are in many respects the reverse of those which prevail with us.

In the case of Beckham v. De Saussure, referred to above, the authority of the English cases was not recognized, and in a well considered opinion the reasons are given on which the judgment of the court is founded, recognizing the correctness of the principle for which the plaintiffs here contend, that "issue male," when used as words of limitation, are equivalent to "heirs male of the body," and define an estate which can descend only to males whose descent has been wholly through males. But where they are not used as words of limitation, they mean in their natural and primary sense any male descendants, whether their descent be through males or females.

In the present case there does not appear to be anything in the will, or in the circumstances surrounding the testator at the time at which it was made, which would justify our giving to the words "male issue" any other than their plain and legal meaning. The testator has not attached to them a special sense, and the legal meaning must then prevail; the conclusion follows that all the male issue or descendants of Richard Wistar, the son of the testator, who were living at the death of the survivor of testator's two daughters named in the will, are entitled to share in the inheritance of the Prospect Hill estate, whether they trace their descent through males or through females.

Judgment is given in favor of plaintiffs for their respective interests, upon the statement of facts agreed on; decree to be prepared in accordance with this opinion.

The court in accordance with this opinion entered the following judgment:

June 16, 1883, judgment for plaintiffs for three undivided sixth parts of the real estate and premises described in the writ and case stated, with costs of suit, etc.

The defendants thereupon took this writ of error, assigning for error the said judgment.

*John G. Johnson* (*Samuel T. Jaquett* with him), for the plaintiffs in error.—The words "male issue" may mean one of

two things, male children, or a stream of male descendants from source to finish.

1. "Issue" is an ambiguous word. In popular parlance it means children, in legal parlance it means descendants. The popular meaning is illustrated in the definitions given by lexicographers, in Shakespeare and general literature, and by judicial decisions: Wells *v.* Ritter, 3 Wharton, 208; Ralph *v.* Carrick, L. R., 11 Ch. Div., 873. And the popular meaning should ordinarily be applied in construing wills: Bryan *v.* Mansion, 5 De Gex & Smale, 737; Edwards *v.* Edwards, 12 Beav., 97; Morgan *v.* Thomas, L. R., 9 Q. B. Div., 643 (1882). Male issue has often been construed to mean sons, male children. Taylor *v.* Taylor, 63 Pa. St., 481; Middlesworth *v.* Blackmore, 74 Pa. St., 414; Hampson *v.* Brandwood, 1 Maddock, 381. We submit that in this case the context shows an intent to use the words in their limited or popular meaning. With breaks, not material in this connection, the will runs: "I give the same unto the male issue then living of my said son Richard, their or his heirs and assigns in fee; but if no such issue shall then be living, in such case I give the same unto *all* the *children* of . . . . . my said son Richard, their heirs and assigns, in equal parts, according to the number of them." The testator gives to the "*male* issue," (or children), of Richard, then living, or failing these, to ALL the children of the latter, thus demonstrating his intent, there being no *male* children then alive, to vest the remainder in fee in his children. The testator adopted his son Richard as the male source, though he was then unmarried; he contemplated that the precedent life estates might extend to the period of Richard's having children, but not to a period of indefinite multiplication, and attenuation in subsequent generations.

2. If, however, the technical meaning of "issue" be applied to this will, we must also adopt the technical meaning of "male issue," viz., male descendants tracing through males, a continuous stream of males, bearing the ancestor's name, unbroken by intermediate females. If the testator meant by "male issue" male descendants of any generation, he had in mind the beginning and middle as well as the end. He would doubtless have been surprised had he been told that his son Richard, if he had no sons, but daughters only, might nevertheless have "male issue." The words "male issue" are most frequently used as words of limitation, but there is no reason why a different meaning should be given to them when used as words of purchase: Oddie *v.* Woodford, 3 My. & Cr., 584; Bernal *v.* Bernal, 3 Id., 559; Thelluson *v.* Rendelsham, 7 House of Lords cases, 428; Lywood *v.* Kimber, 29 Beav., 38; Hawkins on Wills, 171, 172; Theobald on Wills (ed. 1876), 271.

[Wistar v. Scott.]

Jarman, indeed, who wrote in 1843, attempted, without authority, to draw a distinction between the words, " issue male " as words of limitation and as words of purchase, and his statement afterwards led the majority of the court into error in the South Carolina case, Beckam *v.* De Saussure, cited by defendants in error. But Hawkins, who wrote in 1863, after the meaning of the words had become well established, expressly states that when used as words of purchase they mean exactly the same as when used as words of limitation, and Theobald, who wrote in 1876, also finds it concluded by authority that " the heir male taking *by purchase* must claim through males."

Jos. B. Townsend (*J. Sergeant Price* with him), for the defendants in error.—In a devise to A. for life remainder to the issue of B., unqualified by the context, the word " issue " is a class designation, under which all lineal descendants of B., of any generation, living at A.'s death, would take, per capita. Miller's Appeal, 2 P. F. S., 113 ; Coyle's App., 2 Norris, 242. If the word " issue " in such devise be preceded or followed by the word " male " the only effect is to exclude lineal descendants who are females : Beckam *v.* De Saussure, 9 S. C. Rep., 546. Under the devise here, if Richard or William Lewis Wistar had had a son or sons living at the vesting of the remainder, their sons would answer equally with them the description of the class, and would participate with them in the gift. The fact that the defendants in error are sons of a daughter of testator's son Richard does not exclude them from the class of male issue of Richard, under a direct devise to such class as purchasers. The arguments and authorities based upon the construction of the terms " issue " or " male issue " when used as words of limitation have no application to this case ; nor are those cases applicable in which those terms, used as words of purchase to designate a class of devisees, have been qualified by a particular intent discerned in the context of the will. Our contention is well supported in the opinion of the court below.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

The single question presented by this record has been so fully and satisfactorily discussed by the learned president of the Common Pleas that little, if anything, can be profitably added to what he has said in the clear and exhaustive opinion upon which the judgment of that Court is based.

After devising the " Prospect Hill " lot to his daughters Catharine and Sarah " for and during all the term of their

natural lives, and the life of the survivor of them," the testator disposed of the estate in remainder in the following words: " And from and immediately after the decease of the survivor of them, I give the same unto the male issue, then living, of my said son Richard, their or his heirs and assigns in fee; but if no such issue shall then be living, in such case I give the same unto all the children of my said daughters Catharine and Sarah and my son Richard, their heirs and assigns, in equal parts, according to the number of them."

The remainder thus devised was clearly contingent, because it was to a class not in existence, either at the date of the will, or when it became operative in 1821 by the death of the testator. Moreover, testator's son Richard, to whose male issue the estate in remainder was given, was not married until June, 1824, and the survivor of the life tenants lived until September 21, 1866.

The word "issue" in a will, prima facie, means the same as heirs of the body, lineal descendants indefinitely, and is to be construed as a word of limitation; but the prima facie construction gives way if there is anything on the face of the will to show that the word was intended to have a less extended meaning, and to be applied to children only, or, as in this case, to lineal descendants of a particular class in being at a specified time. Slater *v.* Dangerfield, 15 M. & W., 263. The phrase, "male issue of my son Richard then living," is a *descriptio personarum*, designating the class of persons to whom the remainder in fee was given upon the termination of the particular life estate; and the question is, who composed that class when the survivor of testator's two daughters died, September 21, 1866; in other words, who, according to the true interpretation of the will, were the male issue of testator's son Richard living at that time? The case stated informs us there were in all, only six male lineal descendants of Richard then in being, viz., his two sons, Richard and William L., plaintiffs in error, and his four grandsons, John M., Lewis A., and Alexander H. Scott, the defendants in error, and sons of his daughter Fanny, and Richard W. Hopkinson, a son of his daughter Sarah.

The contention of defendants in error is that the words "male issue," as employed by the testator, include all the male lineal descendants above named, grandsons as well as sons, notwithstanding the fact that four of them were born, not of sons, but of daughters of testator's son Richard. If this position is correct, it follows that the judgment in their favor for the three undivided sixth parts of the land in controversy is right. On the other hand, the plaintiffs in error contend that the words mean children, male children, and not

male descendants generally of Richard, or that they mean male issue of Richard, tracing their descent through males only.

As has been clearly shown, in the opinion referred to, the word issue, in legal parlance, means lineal descendants, irrespective of their being of the same generation. In our several Acts of Assembly regulating the descent and distribution of real and personal estate of intestates, the words "issue" and "lawful issue" have always been employed as synonymous with lineal descendants, including not only the first, but more remote generations as well. So also in a class of cases to which Eichelberger v. Barnitz, 9 Watts, 449, belongs, where devises, in terms broad enough to pass a fee simple, are reduced to a fee tail by a subsequent provision limiting the estate to another in the event of the first taker dying "without issue," or "without leaving issue," etc., the word issue, as a general rule, is never held to mean children, but lineal descendants generally; and being thus a limitation over upon an indefinite failure of issue or lineal descendants, such devises have always been construed to create an estate tail. When, as in the present case, the word is manifestly used as descriptive of the devisees, and is also restricted to such issue as shall be living at a specified time, it is always construed as a word of purchase, embracing all lineal descendants of the person named, in being at the time so specified, unless it clearly appears from the context that the testator intended otherwise. This principle of construction appears to be fully sustained by the authorities, among which are the following: Haydon v. Wilshere, 3 T. R., 372; Hockley v. Mawbey, 1 Ves. Jr., 150; Freeman v. Parsley, 3 Ves., 421; Leigh v. Norbury, 13 Ves., 340; Wythe v. Thurlston, Ambler, 555; Davenport v. Hanbury, 3 Ves., 257; Hawkins on Wills, 187, 188; Cook v. Cook, 2 Vern., 545; Bradshaw v. Melling, 19 Beav., 417; Ross v. Ross, 20 Id., 645; Miller's Appeal, 2 P. F. Smith, 113; Coyle's Appeal, 2 Norris, 242. In Leigh v. Norbury, supra, the Court said: "It is clearly settled that the word 'issue,' unconfined by any indication of contrary intention, includes all descendants. Intention is required for the purpose of limiting the sense of that word and restraining it to children."

Several classes of cases, in which it has been decided that such intention was sufficiently indicated, are exceptions to the general rule, depending on the peculiar features of each case. One of them is where a precedent estate or interest was given to the parent of the children who were held to be intended by the word issue. In such cases the devise to his issue has been likened to a legal succession in right of the parent. Bradshaw v. Melling, supra, and Robinson v. Sykes, 23 Beav., 40, are

illustrations of this class.   In the latter case the Master of the
Rolls said : " I am of opinion that though the word ' issue ' is
*nomen generalissimum*, and includes all the remotest descend-
ants, that nevertheless, where issue are pointed out as persons
to take with reference to the share of the parent, a gift, which
so far as regards the parent fails, they take on the principle
which may be called a quasi representative principle ; that is,
the children of each parent, whose share fails, take that
parent's share, but not admitting the grandchildren to take in
competition with children."   Whenever it is apparent, from a
consideration of the whole will, that the testator intended to
restrict the gift to children it will be so construed.   In the
case before us there is not the slightest indication of such in-
tention.   Testator's son Richard, whose name is used merely
as descriptive of those to whom the estate in remainder was
given, had no interest under his father's will, or otherwise, in
the land in controversy.   The devisees did not take through
or under him ; but, as a defined class, they took as purchasers
by direct gift from the testator.   There is nothing in the
phraseology of the will to indicate an intention to restrict the
words " male issue " to the sons of Richard, or to his male
issue, tracing their descent through males only.   If the word
" male " had been omitted, it would scarcely be claimed that
all the lineal descendants of Richard, both male and female,
in being at the time designated, would not have been included
in the description.   The only effect of that word is to exclude
female lineal descendants.

For these and other reasons, more fully elaborated in the
opinion of the Court below, we think the judgment should be
affirmed.

                                   Judgment affirmed.