## Collins Estate.

Argued April 28, 1958. Before Jones, C. J., Musmanno, Arnold, Jones and Cohen, JJ.

*Elkins Wetherill,* with him *Knox Henderson,* and *Henderson, Wetherill & O'Hey,* for appellants.

*George C. Denniston,* with him *Snyder & Bent,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 3, 1958:

These appeals present a single question: where a testatrix provides in her will that "Upon the death of either of my said children leaving descendants . . . her surviving, to pay . . . principal . . . to such surviving descendants" are surviving children adopted by testatrix's daughter "descendants" within the meaning of the will?

On December 6, 1912 testatrix executed her will.[1] The pertinent paragraphs of the will are:[2] *"Fourth.* All the rest and residue of my property, real and personal, and wheresoever situated, I give, devise and bequeath unto [testatrix's two sons and a trust company] IN TRUST . . .

"(1) To divide and pay over all the net income of my residuary estate, equally, share and share alike, to my three children *Henry Hill Collins, Jr., Alfred*

---

[1] Testatrix *then* had three children: Henry H. Collins, Jr., Edith C. Collins and Alfred M. Collins. The former was *then* married and had four children, while the latter two were *then* unmarried.

[2] Testatrix in Paragraph 3 gave pecuniary legacies to certain named "children and grandchildren".

*Morris Collins and Edith Conrad Collins* for the terms of their natural lives respectively . . .

"(2)    Upon the death of either of my said children leaving descendants him or her surviving, to pay one-third of the principal of my estate, to such surviving descendants, share and share alike, but taking by representation, provided such descendants have then reached the age of twenty-one (21) years; but in case of the minority of any of them, then to accumulate the income of his, her or their proportionate part of said one-third share and to pay the principal together with the accumulations upon reaching the age of twenty-one (21) years; and in case of the death of any such descendants during minority, then to pay over and distribute his, her or their proportionate share of principal to the next-of-kin of the minor or minors so dying, in accordance with the intestate laws of the State of Pennsylvania.

"(3)    And in default of descendants surviving my said child so dying as aforesaid, then to hold such one-third part for the benefit, share and share alike, of my surviving child or children, and the descendants of any of my children who may then be dead (such descendants taking their parents share by representation), such accrued shares to be subject in all respects to the estates, proportions, limitations, conditions and restrictions that I have hereinbefore provided with respect to the original shares.

"(4)    And upon the death of my last surviving child, without leaving descendants him or her surviving, and in default of the descendants of his or her brothers or sister then living, to pay over the said principal of my residuary estate remaining IN TRUST to such person or persons and in such estate and estates, as my said last surviving child shall by last will and testament or writing in the nature thereof, limit

and appoint; and in default of such appointment to the heirs and next-of-kin of my said last surviving child, in accordance with the Intestate Laws of the State of Pennsylvania."

On September 25, 1921 testatrix died, her three children being then alive. Alfred M. Collins died in 1951, survived by his wife and one adopted daughter.[3] Henry H. Collins, Jr., died January 1, 1957, survived by his wife and four natural born children. Edith C. Perry— the "last surviving child"—died January 8, 1957, survived by her husband and two adopted children (the present appellants)—Barbara Wadhams, adopted when four years of age, on October 2, 1930 and David C. Perry, adopted when approximately eight years of age, on March 10, 1933.

Because of the termination of the trusts created under testatrix's will by reason of the life tenants' deaths a first and final account was filed. At the audit of this account the Orphans' Court of Montgomery County, over appellants' objections, awarded the entire principal of the estate to the four children of Henry H. Collins, Jr., deceased, ruling that Edith C. Perry's adopted children were not her "descendants" under testatrix's will.

Appellants do not base their claim upon the terms of any statute nor upon any contention that the will contains a gift to children, as such, of the life tenants. On the contrary, they claim that by testatrix's use of the word "descendants" in her will she intended to include therein persons to whom property descends under

---

[3] Although Alfred M. Collins' daughter presented no claim, the Orphans' Court of Montgomery County at that time in its adjudication stated: " 'Having been adopted after the date of the will of the testatrix, it is clear that she does not participate in the distribution of the principal of the share of Alfred Morris Collins as his *descendant* . . .' "

the laws of Pennsylvania and that, as adopted children, they are within that class.

The determination of this controversy depends upon an interpretation and construction of the fourth paragraph of this will: an evaluation of testatrix's intent as and to the extent such intent may be evident from the language and terms of the instrument.[4] The keyword is "descendants"; by the employment of this legal and technical word what class of takers did testatrix describe? In this connection it is important to note that this will—obviously a carefully drafted document—refers to five classes of possible takers of testatrix's property: children, grandchildren, descendants (mentioned eight times), next of kin, and heirs and next of kin, the latter two classes to be determined by the intestate laws of Pennsylvania. From the class of "descendants" testatrix's children are excluded both by her description of the events upon which "descendants" were to take and the share which they were to take: the reference in the third paragraph to certain named "grandchildren" did not operate to exclude them as "descendants" yet the terms of the fourth paragraph indicate that "grandchildren", while includable in the class of "descendants", would not necessarily represent the totality of membership in such class. The fact that testatrix directed *how* "next of kin" and "heirs and next of kin" were to be determined—that is, "in accordance with the intestate laws of the State of Pennsylvania"—may have deep significance, as we

---

[4] It is not what we think testatrix might or would have said under the circumstances nor even what we think she meant to say, but what she did say through the medium of the language employed: *Swope Estate*, 383 Pa. 494, 119 A. 2d 57; *Rice v. Shank*. 382 Pa. 396, 115 A. 2d 210; *Wright Estate*, 380 Pa. 106, 110 A. 2d 198; *Walker Estate*, 376 Pa. 16, 101 A. 2d 652.

shall point out, infra, in determining what decedent meant by "descendants".

The meaning of testatrix's designation of certain testamentary distributees as "descendants" must receive its construction from the context of the will and the law extant at the time the will became effective, to wit, September 21, 1921. "But, even though testamentary intent is to be construed as of the date of execution of a will, if the words employed to express the intent have a legal or technical meaning, they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary": *Farmers Trust Co., Executor v. Wilson et ux.*, 361 Pa. 43, 46, 63 A. 2d 14, and cases therein cited; *Ashhurst's Estate*, 133 Pa. Superior Ct. 526, 3 A. 2d 218.[5] Particularly does this will speak from the date of testatrix's death since the legal word employed involves the right of inheritance, a right dependent on statutory authorization. "The right of inheritance is purely statutory, and he who claims a share in the inheritance must point to the law which transmits it to him": *Boyd's Estate*, 270 Pa. 504, 113 A. 691.

Were adopted children "descendants", under the law in effect when testatrix died in 1921? We have said that: "At common law adopted children had no right of inheritance whatsoever from their adopting

[5] In *Johnson's Appeal*, 88 Pa. 346, 353, 354, this Court said: "If, as was said by our brother Mercur in McGunnigle v. McKee, 27 P. F. Smith, 81, one who makes a will is presumed to act in view of the power of the legislature to legitimate a bastard and make it an heir, much more will it be presumed that one making a will acts in view of laws already made, by which a child may be adopted and thus made an heir". The rule applies even though a change in the law be effected between the date of execution and the effective date of the will: *Kohler's Estate*, 199 Pa. 455, 49 A. 286.

parents. All such rights are purely statutory": *How-lett Estate,* 366 Pa. 293, 297, 77 A. 2d 390. Prior to 1855, adoption arose through *special* legislative action in individual instances. The Act of May 4, 1855, P. L. 430, was the first *general* legislation in this Commonwealth relating to adoption; it granted an adopted child *"all* the rights of a child and heir of [the] adopting parent, . . .: Provided, that if [the] adopting parent shall have other children, the adopted shall share the inheritance only as one of them in case of intestacy, and he, she or they shall respectively inherit from and through each other, as if all had been the lawful children of the same parent." See *Carroll's Estate,* 219 Pa. 440, 445, 68 A. 1038; *Thompson's Adoption,* 290 Pa. 586, 590, 139 A. 737.

This Act of 1855 has a four-fold significance: its declaration that an adopted child was the "heir" of its adopting parents, its recognition of the existence of reciprocal rights of inheritance between an adopted child and its adoptive brothers and sisters, its omission to grant reciprocal rights of inheritance to the adopting parents and its recognition that estates of intestates might descend to and be distributed among persons not of the blood of the intestate.[6] In the wake of this statute a "somewhat confused state of judicial expression in regard to this subject . . ." resulted.[7] Twelve years later this Court stated: "Adopted children are not children of the person by whom they have been adopted, and the Act of Assembly does not attempt the impossibility of making them such . . . The right to inherit from the adopting parent is made com-

---

[6] Cf: Intestate Act of April 8, 1833, P. L. 315. See *Phillip's Estate,* 17 Pa. Superior Ct. 103.

[7] The language of Mr. Justice (later Chief Justice) STERN, in *Cave's Estate,* 326 Pa. 358, 364, 192 A. 460.

plete but the identity of the child is not changed. One adopted has the rights of a child without being a child."[8] A review of the decisions under the Act of 1855 and subsequent adoption and inheritance statutes[9] prior to the passage of the Wills and Intestate Acts of 1917 indicates that, even though the legislature expressly declared an adopted child to be both a child and an heir of his adopting parents, our courts in many instances failed to grant such a status to the adopted child. An adopted child was acknowledged to have the right to inherit his adopted parent's estate;[10] in the absence of adoptive brothers and sisters, a deceased adopted child's estate would go to its natural, rather than adopting parents;[11] the estate of a deceased adopted child which came from his natural parents, the adopting parents being alive, would go to his natural, rather than adoptive, brothers and sisters;[12] an adopted child was considered within the term "issue";[13] legal heirs of an adopted child, predeceasing

---

[8] *Schafer v. Eneu*, 54 Pa. 304, 306. "Giving an adopted son a right to inherit does not make him a son in fact" nor affect the provisions of an inheritance tax statute: *Com. v. Nancrede*, 32 Pa. 389, 390; *Tharp v. Com.*, 58 Pa. 500. The Act did not put an adopted child in all respects in the relationship of a child in fact: *Goldstein v. Hammell*, 236 Pa. 305, 84 A. 772; *Morgan v. Reel*, 213 Pa 81, 62 A. 253; *Corr's Estate*, 338 Pa. 337, 340, 12 A. 2d 76.

[9] Act of April 2, 1872, P. L. 31 (adoption by deed); Act of April 13, 1887, P. L. 53; Acts of May 9, 1889, P. L. 168 and June 1, 1911, P. L. 539 (adoption of adults); Act of May 28, 1915, P. L. 580.

[10] *Schafer v. Eneu*, supra; *Goldstein v. Hammell*, supra; *Kohler's Estate*, supra. Cf: *Leinbach's Estate*, 241 Pa. 32, 35, 88 A. 67.

[11] *Com. v. Powel*, 16 W.N.C. 297.

[12] *In Re Daisey's Estate*, 15 W.N.C. 403.

[13] In *Estate of Rowan*, 132 Pa. 299, 19 A. 82, a testator died survived by his widow and an adopted daughter; the widow's right to one-half of the estate depended on whether testator had died

the adopting parent, could succeed to the rights of the adopted child as the heirs at law of the adopting parent.[14] Until the Acts of 1917, infra, our Court uniformly refused to permit an adopted child to inherit from collateral kindred of its adopting parents, or they from it;[15] nor could an adopted child, unlike a natural child, inherit if the adoption took place subsequent to the making of a will by its adopting parent.[16] Such was the status of adopted children when the Wills and the Intestate Acts of 1917 were passed.[17]

The passage of the Intestate Act of 1917 gave to an adopted person the right to take as heir; likewise, in the restricted situations covered by it, the Wills Act of 1917 gave an adopted child the right to take as a child. At the time the testatrix died, the rights of inheritance of adopted children depended on the terms

---

"without issue". In holding that the adopted daughter was included in the term "issue" the Court treated the Act as having given to an adopted child all the rights of a natural child. Cf: *Howlett Estate*, supra, where this Court squarely held that an adopted child was issue of his natural, and not adopting parents; *Ashhurst's Estate*, supra.

[14] *Webb's Estate*, 250 Pa. 179, 95 A. 419.

[15] In *Burnett's Estate*, 219 Pa. 599, 69 A. 74 (interpreting the Act of 1887, supra), an adopted child of a deceased brother was not allowed to claim a share as the representative of his adopting parent in the estate of another brother who died intestate, survived by a brother, a sister and children of a deceased brother. See also: *Smith's Estate*, 225 Pa. 630, 74 A. 622; *Puterbaugh's Estate*, 261 Pa. 235, 104 A. 601; *Yates's Estate*, 281 Pa. 178, 126 A. 254; *Freeman's Estate (No. 1)*, 40 Pa. Superior Ct. 31. "The door of inheritance (was) shut and its bolt shot" at the precise point of inheritance by the child from its adopting parents: *Hockaday v. Lynn*, 200 Mo. 456, 98 S.W. 585.

[16] *Boyd's Estate*, supra.

[17] Wills Act of June 7, 1917, P. L. 403, §§16(a), 16(b), 20 PS Ch. 2, App. §§227, 228; Intestate Act of June 7, 1917, P. L. 429, §§16(a), 16(b), 20 PS Ch. 1, App. §§101, 102.

of the statutes governing inheritance and wills, rather than on the terms of the adoption statutes.

The provisions of the Intestate Act of 1917 applicable to adoptions, supra, are: "Section 16.(a) Any minor or adult person adopted according to law, and the adopting parent or parents shall, respectively, inherit and take, by devolution from and through each other, personal estate as next of kin, and real estate as heirs, under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents.

"Section 16.(b) The person adopted shall, for all purposes of inheritance and taking by devolution, be a member of the family of the adopting parent or parents. The adoptive relatives of the person adopted shall be entitled to inherit and take from and through such person, to the exclusion of his or her natural parents, grandparents, and collateral relatives; but the surviving spouse of such adopted person, and the children and descendants of such adopted person, shall have all his, her, and their respective rights under this act. Adopted persons shall not be entitled to inherit or take from or through their natural parents, grandparents, or collateral relatives, but each adopted person shall have all his or her rights under this act in the estates of his or her spouse, children, and descendants."

In *Thomas Estate*, 2 Pa. D. & C. 89, 95, Judge (later Justice) Hughes, in a well-considered analysis of sections 16 (a) and (b) of the 1917 Act made the following observations: (1) clause (a) is "devoted exclusively to the inheritance rights of the two immediate parties to the adoption"; (2) by the use of the word "from" the survivor of such immediate parties is given the right of inheritance; (3) by the use of the word "through" the immediate parties are given the right to inherit, "not merely from the other immediate party,

but also from the latter's relatives and kindred, through the channel left open by the latter's death"; (4) clause (b) is the converse of clause (a) and gives the adoptive relatives of the person adopted "the right to inherit and take not only 'from' the adopted person himself, but also from 'his children and descendants' "; (5) while "the statute has thrown open both gates of the channel of adoptive inheritance" and while it does not expressly provide for or authorize inheritance "by the children and descendants of the adopted person from the adopting parent and from the latter's kindred, . . . such reverse or reciprocal inheritance is necessarily implied"; (6) the statute impliedly permits "the children and descendants of the adopted person . . . to inherit, . . . not only from the adopting parent, but also from the latter's natural relatives, 'through' the gates of the channel of inheritance left open by the deaths of the original adopting and adopted persons." It has been said that as a result of this statute "the status of the adopted person and the adopting parents is changed and under the theory of the law the latter become the actual parents of the former."[18]

In *Cave's Estate*, 326 Pa. 358, 362, 192 A. 460, Mr. Justice (later Chief Justice) STERN in a landmark decision finally gave to the statutory provisions the broad interpretation manifestly demanded by their terms: ". . . By the use of both words—'from' and 'through'—it is clear the legislature intended that the adopted child should have the right to inherit not only property in which his adoptive parent himself owned a vested interest, but property of kindred of his adoptive parent which the latter would have inherited had he been living, and which, by reason of his death, passes 'through' him to his adopted child as it would have done,

---

[18] A. J. White Hutton, Concerning Adoption and Adopted Persons as Heirs in Pennsylvania, 42 Dick. L. Rev. 12, 28.

to use the language of section 16 (a), 'if the person adopted had been born a lawful child of the adopting parent or parents.' "[19]

The Wills Act of 1917, supra, so far as pertinent to the subject of adopted children, covered situations whenever in a will a bequest or devise was made to a child or children without naming such child or children; if the child or children are those of the testator an adopted child or children are included in the bequest or devise; if the child or children are of a person other than testator only such adopted child or children adopted before the date of the will are included in the bequest or devise. Such provisions are inapplicable if the will evidences a contrary intent. Subsequent to the passage of this Act our Court continued to hold that the adoption of a child after the making of a will by its adoptive parent did not avoid the will as to such child: *Goldstein v. Hammell*, supra; *Boyd's Estate*, supra. On May 20, 1921, section 21 of the Wills Act, supra, was amended to provide that "When any person . . . shall make a last will . . . and afterward . . . shall have a child or children, . . . by adoption, . . . and shall die leaving . . . such child or children, . . . so far as shall regard the . . . child or children . . . adopted after the making of the will, [he] shall be deemed and construed to die intestate; and such surviving . . . child, or children, shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."[20]

---

[19] In *Cave's Estate*, the Court fully analyzed and distinguished three cases which were the cause of some confusion subsequent to the passage of the 1917 Act, supra: *Russell's Estate*, 284 Pa. 164, 130 A. 319; *Cryan's Estate*, 301 Pa. 386, 152 A. 675; *Reamer's Estate*, 315 Pa. 148, 172 A. 655. See also: *Reamer's Estate*, 331 Pa. 117, 200 A. 35; *Ottavi v. Timothy Burke Stripping Company*, 140 Pa. Superior Ct. 389, 14 A. 2d 188.

[20] Act of May 20, 1921, P.L. 937, §1.

Although both the Intestate and Wills Acts are inapplicable to the instant factual situation reference is made to their provisions to indicate the extent to which the legislature, at the time of testatrix's death, had broadened and extended the adoption concept. Through the legislative mandate an adopted child in 1921 possessed *all* the rights of a natural child, both as to its adopting parents and the collateral kindred of its adopting parents. As we said in *Fisher v. Robinson,* 329 Pa. 305, 310, 198 A. 81: "Under section 16(b) [of the Intestate Act of 1917] the adopted child then became *a member of the family* of [the adopting parent]". (Emphasis supplied)

If we examine carefully the legal and technical words which the testatrix employed in describing the recipients of her bounty we can only conclude that she selected such words with discrimination and care. For instance, when testatrix describes certain possible recipients of her bounty as "next of kin" and "heirs and next of kin" she directs that the composition of each class shall be determined "in accordance with the intestate laws of the State of Pennsylvania". Had testatrix simply described such possible distributees as "next of kin" and/or "heirs and next of kin" they would be construed as "including only those relatives who are in the nearest degree of relationship to the person designated, to the exclusion of the children of any relatives in that degree who died prior to the gift's taking effect, even though the latter would have shared in the estate, under the applicable statutes, had the ancestor died intestate": 57 Am. Jur., Wills, §1375; *Everitt's Estate (No. 1),* 195 Pa. 450, 457, 458, 46 A. 1; *Shippen Estate,* 170 Pa. Superior Ct. 405, 408, 85 A. 2d 887. However, the instant testatrix qualified such distributees "in accordance with the intestate laws of the State of Pennsylvania". The result is that the words "next of kin" and "heirs and next of kin" "are to be regarded as

superfluous or having been used by the testatrix in their popular sense, meaning those who are entitled to the personal estate of a decedent under the statute of distribution": *Garrett's Estate*, 249 Pa. 249, 252, 94 A. 927. Therefore had any of the events occurred upon which distribution was directed to be made under the will either to the "next of kin" or "heirs and next of kin" it would have had to be made to the persons entitled under the intestate laws, *including blood relatives as well as persons not of the blood, as a husband or a wife*. Furthermore, the power of appointment given by testatrix to her "last surviving child" under Paragraph 4(4) was *not* restricted to persons of the blood. Unless it be present in the word "descendants" there appears to be no restriction of distribution to persons of the blood under this will. If the testatrix did not see fit to weave into the fabric of this will a restriction of distribution of her estate to persons of blood descent does the employment of the word "descendants" compel that we do so? Neither etymologically nor legally does the word "descendants" connote a blood relationship.

Other jurisdictions have held the term "descendants" to include an adopted child or children: *Upjohns' Will*, 304 N.Y. 366, 107 N.E. 2d 492; *Fedders' Will*, 61 N.Y.S. 2d 340; *In re Dudley's Will*, 6 N.Y.S. 2d 489; *Wildman's Appeal*, 111 Conn. 683, 151 A. 265; *Hale v. Hale*, 237 Ill. App. 410; *Hoellinger v. Molzhon* (N.D.), 41 N.W. 2d 217; *In re Harmount's Estate*, 336 Ill. App. 322, 83 N.E. 2d 756; *McFadden v. McNorton,* 193 Va. 455, 69 S.E. 2d 445; *Dean v. Smith*, 195 Ark. 614, 113 S.W. 2d 485; *In re Tibbett's Estate*, 48 Cal. App. 2d 177, 119 P. 2d 368; *Warren v. Prescott*, 84 Me. 483, 24 A. 948; *In re McEwan's Estate*, 128 N.J. Eq.140, 15 A. 2d 340; *In re Buell's Estate*, 167 Ore. 295, 117 P. 2d 832. See also: Construction of Private Instru-

ments Where Adopted Children Are Concerned, 43 Mich. L. Rev. 913; 19 ALR 2d 1160 et seq.

The court below, in reaching its conclusion, laid great stress on the obvious dicta in *Howlett Estate,* supra, p. 299: " 'Descendants' and 'issue' are synonymous: . . ." Even a cursory examination of that decision clearly indicates that the *only* question therein was whether the word "issue" included an adopted child. In holding that "issue" did not include an adopted child it was completely unnecessary to pass upon the synonymity of "descendants" and "issue". While both words may be used synonymously they *are not always or strictly* synonymous. "Issue", was defined by this Court in *Howlett Estate,* p. 297, as: "issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent . . ." Unlike a child or children whose relationship to it or their parent may now be created either by physical birth or by adoption, issue strongly connotes a blood relationship which arises solely by actual birth of the child to the parent. Issue is "a description of the persons next to take from the testator and not a line of inheritance": *Lippincott Estate,* 349 Pa. 538, 545, 37 A. 2d 599; *Butler Estate,* 364 Pa. 279, 283, 72 A. 2d 110.[21]

While on occasion we have used the words "issue" and "descendants" interchangeably an examination of our decisions indicates that such use was frequently for the purpose of avoiding the harsh and rigid Rule in *Shelley's* case and led to the construction of "issue" as a word of purchase, rather than a word of limitation: *Lippincott Estate,* supra, p. 545.

---

[21] ". . . Non-technical words such as 'issue' . . . have been construed as an individual person or class. Lodington v. Kime, 1 Salk. 224 (issue); Bowles' Case, 11 Co. 79b (issue); Bannester v. Lang, 17 L.T.N.S. 137 (issue) . . .": 27 H. L. Rev. p. 674

We have frequently said, as in *Schwab Adoption Case*, 355 Pa. 534, 536, 50 A. 2d 504: "In Pennsylvania a valid adoption severs the child from its natural family tree and engrafts it upon that of its new parentage. Thereafter the child attains the status, in law, of a natural child of the adopting parents: Cave's Estate, 326 Pa. 358, 192 A. 460". See also: *Southard Adoption Case*, 358 Pa. 386, 57 A. 2d 904: By the time testatrix died an adopted child, through the offices of the adoption and inheritance statutes, had attained the legal status of a natural child and a member of the family of his adopting parents. Appellants, even though their adoption took place subsequent to the execution date of this will, were at the time the event occurred upon which a distribution of principal was directed to be made by the testatrix—Edith C. Perry's death—in the eyes of the law in exactly the same relationship to testatrix's daughter as though born of her body. In the absence of any language in this will from which an intent can be inferred to limit the meaning of "descendants" to persons in the blood line and in view of the broad meaning of "descendants", to hold that adopted children are excluded from the terms of this will would deprive them of the benefit of the statutory declaration conferring upon them *all*—not some—of the rights of a natural child. Had testatrix's deceased child been survived by natural children, obviously they would have been "descendants" of such deceased child. To exclude adopted children—occupying a status equating that of natural children—from the class of their adopted mother's "descendants" on the basis of an assumed intent on testatrix's part to exclude from the word "descendants" persons not of the blood is without basis either in the provisions of this will or in the law in effect when testatrix died.[22] That appellants

---

[22] *Strunk Estate*, 369 Pa 478, 87 A. 2d 485, dealt with the language of the transfer inheritance tax statute and is inapposite.

were not adopted until long after the effective date of the will does not compel a contrary conclusion.[23] Testatrix foresaw that the time of taking by her children's "descendants" would be in the distant future and she actually provided that only those "descendants" would take who survived her child or children; certainly testatrix knew that her child or children legally could and actually might adopt children before the event of taking. Is it any less logical to conclude that testatrix intended that adopted children be included in the class of takers than to conclude that testatrix intended that only natural children or children of the blood be included in such class? Neither etymologically nor historically has the word "descendants" acquired such significance that it points unerringly in this will— in the face of the legally accepted equation of status of an adopted child and a natural child—to an intent to exclude from a testatrix's bounty children legally adopted by her children.

After years of lip service to the legislative mandate it is appropriate that we recognize the rights which the legislature granted adopted children. Etymologically, "descendants" can include those not of the blood; historically, socially and by legislative mandate the status of an adopted child has equated with that of a natural child. Are we going to read into the terms of this will an intent upon the part of testatrix to exclude the "chosen" children of her own children—those whom the law equates with children of the blood—and assume that testatrix indicated descent only through blood lines when other provisions of her will contradict this idea? Under the law as it stood when testatrix died, an adopted child had *all* the rights of a natural child; when a will's terms are consonant with this broadened

---

[23] Both *Yate's Estate*, supra, and *Puterbaugh's Estate*, supra, foreclosed the introduction of such evidence.

conception of adoption we will not, in the absence of any evidence, impute to testatrix a discriminatory attitude.

Decree reversed. Costs on the estate.