## Cave's Estate.

Argued April 20, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Boyd Lee Spahr*, of *Ballard, Spahr, Andrews & Ingersoll*, for appellant.

*J. Wesley Oler,* with him *Ruby R. Vale,* for appellees.

OPINION BY MR. JUSTICE STERN, May 17, 1937:

Decedent, W. Lewis Cave, died September 21, 1935, intestate, unmarried, and without issue. He was survived by four nephews and by Jean Cave, adopted daughter of another nephew, Warren F. Cave, who had died before decedent. Jean Cave, when adopted in 1922, was two years old, the decree of the court providing that she should "assume the name of Warren F. Cave and Mary R., his wife, and have all the rights of a child and heir of the said Warren F. Cave and Mary R., his wife, and be subject to the duties of such child." The present question is whether she is entitled to inherit a fifth part of decedent's estate. The court below rejected her claim and ordered distribution among the four nephews. The guardian of Jean Cave appeals.

The Intestate Act of June 7, 1917, P. L. 429, section 9 (d), provides that, in default of issue, parents, brothers and sisters, the property of an intestate who leaves nephews and nieces shall be divided among them per capita, and "Each child of a deceased nephew or niece . . . shall receive an equal portion of the share which his or her parent would have received if living at the death of the intestate." Does the *adopted* child of a deceased nephew come within this provision?

The right of adopted children to inherit from kindred of their adoptive parents is dependent entirely upon statutory enactments, and because the "call of the blood" is one of the most firmly rooted instincts of human nature, courts tend to a strict construction of such legislation. In the absence of a plain legislative mandate to the contrary a stranger to the adoption proceedings should not have his property diverted from its natural course of descent to the heirs of his blood; therefore, a statutory grant to adopted children of the right to inherit from their foster parent does not necessarily carry with it the right to inherit from the latter's col-

lateral relatives. However, it must be conceded to be within the legislative power to confer such a right upon an adopted child, and the problem in the present case is to ascertain whether the statutory law of the state is properly to be construed as having granted it.

It is certain that prior to the Intestate Act of 1917 no such right existed. The Act of May 4, 1855, P. L. 430, section 7, established a procedure for the adoption of children, and authorized the court to decree that the child should assume the name and have all the rights of a child and heir of the adopting parent; with a further provision that if the adopting parent should have other children the adopted child should share the inheritance as one of them in case of intestacy, and he, she or they should respectively inherit from and through each other as if all had been the lawful children of the same parent. The supplementary Act of April 13, 1887, P. L. 53, provided that if an adopted child died intestate without issue the adopting parents and their heirs and kindred should inherit from him the same as though he were the natural child of the adopting parents, to the exclusion of his natural parents and kindred; in case the adopting parents died intestate, the adopted child should inherit their property the same as though he were their lawful child and heir; provided, however, that the act should apply only to such property as the adopted child should have inherited or derived from the adopting parents or their kindred. Nothing in these statutes gave to adopted children the right to inherit from the collateral relatives of their foster parents, and it was therefore held in *Burnett's Estate,* 219 Pa. 599, that an adopted child could not share in the estate of his adoptive father's brother, the adoptive father having predeceased his brother. The court said that while the Act of 1855 conferred upon an adopted child all the rights of a child and heir of the adopting parent, "it does not, however, give such a child the rights of a

nephew or niece, and of a collateral heir of the brothers and sisters of the adopting parent; and if it had been the intention to change the intestate acts so that intestate's estate should descend without his consent to a person not of his blood, surely such an intention would have been clearly expressed."

By the Act of May 28, 1915, P. L. 580, the Act of 1855 was amended to provide that the adopted child and the adopting parent should respectively inherit and take by devolution from *and through* each other as fully as if the adopted child had been born a lawful child of the adopting parent. The Intestate Act of June 7, 1917, P. L. 429, repealed all these preceding acts so far as they related to inheritance and devolution under the intestate laws, but substantially re-enacted them. Section 16 (a) provided: "Any minor or adult person adopted according to law, and the adopting parent or parents shall, respectively, inherit and take, by devolution from *and through* each other, personal estate as next of kin, and real estate as heirs, under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents." Section 16 (b) provided: "The person adopted shall, *for all purposes of inheritance and taking by devolution,* be a member of the family of the adopting parent or parents. The adoptive relatives of the person adopted shall be entitled to inherit and take from and through such person, to the exclusion of his or her natural parents, grandparents, and collateral relatives; . . . Adopted persons shall not be entitled to inherit or take from or through their natural parents, grandparents, or collateral relatives, . . . " It is immediately obvious that this is broader and more comprehensive phraseology than was employed in the earlier statutes.

Since the enactment of the Intestate Act of 1917 there have been three cases in this court which, by way of dicta or decision, are pertinent to the present inquiry.

The first was *Russell's Estate*, 284 Pa. 164, where it was held that, under section 15 (b) of the Wills Act of June 7, 1917, P. L. 403, providing that under certain circumstances a legacy to a predeceasing niece should not lapse if she left *issue* surviving the testator, an adopted child of the niece was not to be considered as such issue. This decision has no bearing upon the question now under consideration, but in the course of the opinion it was said (p. 168), quoting from the court below: "In *Burnett's Est.*, 219 Pa. 599, it was held that an adopted child could not inherit from the collateral kindred of adopting parents; *a state of the law altered by the Act of May 28, 1915, P. L. 580, and by section 16 (a) and (b) of the Intestate Act of 1917.*"

The second case was *Cryan's Estate*, 301 Pa. 386. There a testatrix devised real estate to four sisters, a brother, and her own adopted daughter. The testatrix died in 1913. One of her sisters died in 1914, unmarried and without issue; another, a widow without issue, died in 1925; another, a widow leaving two children surviving, died in 1929; the brother died later in 1929, unmarried and without issue; the fourth sister and the adopted daughter of the testatrix remained alive at the time of the litigation, which was a proceeding for a declaratory judgment to determine the proper construction of the will of testatrix in regard to the amount and nature of the interests given to the six devisees. The court held they took vested estates as tenants in common, share and share alike. This decision, which adjudicated the actual controversy among the litigants, is of no present relevancy, but the court proceeded to state (p. 402) that it agreed with the court below that upon the death of the one sister in 1914 her undivided share in the real estate descended to her then surviving sisters and brother *and the adopted child of the testatrix;* that upon the death of the next sister in 1925 her undivided share descended to her then surviving sisters and brother *and the adopted child of testa-*

*trix;* that upon the death of the third sister in 1929, her undivided share descended to her two surviving children; that upon the death of the brother in 1929, his undivided share descended to his surviving sister, *to the adopted daughter of testatrix,* and to the two children of the sister who had died earlier the same year. The court said (p. 403) : "It remains to say only that the original devisees enjoyed vested estates in the real property here involved; several of them . . . died intestate, after the testatrix, and, under section 16 (b) of the Intestate Act of June 7, 1917, P. L. 429, 439, appellant—being an adopted child of the original decedent, and, because of this position, viewed in law as a niece of those devisees who died without issue (see *Russell's Estate,* 284 Pa. 164, 166-8),—inherited a portion of their respective shares. These facts and the statute last cited must be taken into consideration to understand the correctness of the judgment entered in this case." The court affirmed the judgment of the court below which gave to the adopted daughter of testatrix, as a result of the successive inheritances above enumerated, a one-third interest in the devised property. It will be seen therefore that not only the language of the court, but the actual judgment, established the right of the adopted daughter of testatrix to inherit through her deceased adoptive parent from the latter's brother and sisters. The existence of this right was not made the subject of argument, but was apparently assumed as a matter of course by the litigants, by the court below, and by this court on appeal.

The third case was *Reamer's Estate,* 315 Pa. 148. There the decedent died intestate. Her next of kin were first cousins, and the register of wills, upon their nomination, appointed an administrator of the estate. A nominee of an adopted daughter of a predeceased sister of decedent filed a petition praying that the original grant of letters be revoked and that he be appointed instead. The dismissal of this petition was held by this

court, in a per curiam opinion, to be proper. That the decision was correct cannot be doubted, because the Fiduciaries Act of June 7, 1917, P. L. 447, section 2 (c) provides that letters of administration shall be granted to the widow, if any, of the decedent, "or to such of his relations or kindred as by law may be entitled to the residue of his personal estate, . . . preferring always, of those so entitled, such as are in the nearest degree of consanguinity with the decedent, . . . " It is obvious that the adopted daughter of the predeceased sister was not entitled to nominate the administrator, for even if she were to be considered as included within the term "relations," the first cousins were "in the nearest degree of consanguinity," the adopted child not being of the blood at all. The opinion of the court, however, discussed the question as to whether an adopted child can inherit from the estate of a relative of the predeceased adopting parent, and stated (page 150), by way of what must be regarded purely as dictum: "We repeat what we have always heretofore said, that the estate which an adopted child is entitled to have is limited by the statute, to one which comes 'from and through' the adopting parent, and that an estate in which the latter never had any interest, cannot possibly go to the adopted child since it cannot be derived 'from' or 'through' the adopting parent."

Such being the somewhat confused state of judicial expression in regard to this subject, we have no hesitancy now in deciding, apart from any binding authority to be ascribed to the decision in *Cryan's Estate*, that the Intestate Act of 1917 permits of no reasonable construction other than that, by its terms, an adopted child has the same right of inheritance from the collateral kindred of his adoptive parents as a natural child of such parents would have. The court below apparently relied upon the statement in *Reamer's Estate* that an adopted child is not entitled to inherit an estate in which his adoptive parent never had a vested interest.

Such a construction of section 16 of the Intestate Act is wholly untenable. It gives no effect to the word "through." If it be held that the adoptive parent must have had a vested interest in property in order to entitle the adopted child to inherit it, the Intestate Act has added nothing to previous legislation, since that had already provided for direct inheritance by the adopted child from the adoptive parent of property owned by the latter. But the Intestate Act, copying the phraseology of the Act of May 28, 1915, P. L. 580, provided for inheritance by the adopted child and the adopting parent "from *and through* each other." The word "from" contemplates the death of either the adopted child or the adoptive parent, the statute giving the survivor the right to inherit from the deceased. But the word "through" extends the inheritance rights of both the adopted child and the adoptive parent to those arising by virtue of representation of each other for purposes of devolution, thereby qualifying them to inherit, not merely from one another, but from one another's relatives and kindred through the channel left open by the death of either. The word "through" presupposes the death of the adopted child or the adoptive parent, leaving the other surviving, and entitling him to inherit from a third person in the right of the one thus deceased. When a child inherits from a parent property of which the latter is seised, he takes "from," but not "through," such parent. When, on the other hand, he inherits property from a third person by right of representation of his parent who would have inherited the property were he living, he takes "through," not "from," his parent. By the use of both words— "from" and "through"—it is clear the legislature intended that the adopted child should have the right to inherit not only property in which his adoptive parent himself owned a vested interest, but property of kindred of his adoptive parent which the latter would have inherited had he been living, and which, by reason of

his death, passes "through" him to his adopted child as it would have done, to use the language of section 16 (a), "if the person adopted had been born a lawful child of the adopting parent or parents."

The language of clause (a) of section 16 is greatly strengthened and emphasized by that of clause (b). Nothing could be more sweeping than the provisions: "The person adopted shall, for all purposes of inheritance and taking by devolution, be *a member of the family of the adopting parent or parents*. . . . Adopted persons shall not be entitled to inherit or take from or through their *natural* parents, grandparents, or collateral relatives, . . . " This severs the child from his natural family tree and engrafts him upon that of his new parentage "for *all* purposes of inheritance." The evident purpose of this legislation is lost by the interpretation given to the act by the court below.

It is urged that a person should not be permitted, through the expedient of adopting a child, to attach a stranger to the family tree, so as to enable that stranger to share in the estate of the adoptive parent's collateral relatives. The answer to this argument is that if a decedent does not wish such a "stranger" to share in his estate, he can make a will accordingly. Be this as it may, it is not our function to approve or disapprove the policy embodied in legislative enactments, but merely to interpret their meaning, and, in the present case, when we examine the successive statutes historically and analytically, steadily broadening as they do the status of adopted children, it is clear, in our opinion, that the rights of such children now include that of inheritance from the estates of collateral kindred of their adoptive parents.

The decree is reversed, and it is ordered that distribution be made in accordance with this opinion; costs to be paid out of the estate.