Fisher, Appellant, *v.* Robison.

Argued January 17, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*John P. Sipes,* for appellant.

*John W. Mentzer,* for appellee.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

This appeal is from a judgment for defendant in ejectment and turns on the construction of section 16 of the

Intestate Act governing devolution from an adopted person.

The defendant, Mary H. Robison, had three children by her first husband, William Robison, also named as a defendant but not served. She was divorced from him January 28, 1901. On April 3, 1901, she married Dr. D. E. Fisher. January 24, 1906, she deserted Dr. Fisher, who obtained a decree of divorce for desertion on that date. On January 21, 1906,[1] before the desertion, Dr. Fisher, by decree of the Court of Common Pleas of Fulton County, Pennsylvania, adopted one of the children of Mary H. Robison, this child being called in the record, D. Edward Fisher.

Dr. Fisher died February 26, 1936, seized of the land in suit, leaving a will, duly probated, devising his property to his adopted son D. Edward Fisher. The devisee died intestate and unmarried, August 30, 1936, leaving as his nearest collateral, or adoptive relative, James B. Fisher, a brother of Dr. Fisher. Claiming in that right, James B. Fisher brought this suit against Mary H. Robison who had taken possession as heir of D. Edward Fisher.

It would perhaps not be disputed that, if Mary Robison had not been married to Dr. Fisher at the time he adopted her son, the case would be ruled in plaintiff's favor by what was said in *Cave's Estate*, 326 Pa. 358, 192 A. 460. But the learned court below was of opinion that, as D. Edward Fisher was the son by a former marriage of the then wife of Dr. Fisher, "the intention of a husband adopting his wife's child would be not to cut off her rights [of inheritance?] as natural mother and to make the child *his* child to the exclusion of her, but rather to make the child *their* child, and to assume merely the role of father and to share with his wife, as natural mother of the child, the responsibility of caring for

---

[1] We accept the date given by the learned judge in his fifth finding of fact though the record also gives another date.

and rearing the child, . . ." He also said, "It is probable that a stepfather would become so attached to his stepchild that he would want to make him his own, but it would be most improbable that a mother would consent to that procedure if the effect would be that the child would be no longer hers. The predominating intention in such cases must be to bring the household into one legal, as well as actual, family, but this could not result if the rights of the mother were cut off." Accordingly, he concluded that on the death of the adopted son, the inheritance passed out of the family of Dr. Fisher (thus excluding his brother) and vested in the natural mother.

We think this is not a proper construction of section 16 of the Intestate Act which governs the case. The section is as follows: "(a) Any minor or adult person adopted according to law, and the adopting parent or parents shall, respectively, inherit and take, by devolution from and through each other, personal estate as next of kin, and real estate as heirs, under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents.

"(b) The person adopted shall, for all purposes of inheritance and taking by devolution, be a member of the family of the adopting parent or parents. The adoptive relatives of the person adopted shall be entitled to inherit and take from and through such person, *to the exclusion of his or her natural parents,* grandparents, and collateral relatives; but the surviving spouse of such adopted person, and the children and descendants of such adopted person, shall have all his, her, and their respective rights under this act. *Adopted persons shall not be entitled to inherit or take from or through their natural parents,* grandparents, or collateral relatives, but each adopted person shall have all his or her rights under this act in the estates of his or her spouse, chil-

dren, and descendants." (Italics supplied.) (Act of 1917, P. L. 429, 439, 20 PS sections 101, 102.)

Adoption was not a common law act; it depends altogether on the statute, and, in this state, may be defined as taking the child of another in the manner provided by, and with the consequences specified in, the statute.[2] Being in derogation of the common law, it has been strictly construed in order to carry out the legislative intention: *Cave's Estate,* 326 Pa. at p. 358, 192 A. 460; *Morgan v. Reel,* 213 Pa. 81, 90, 62 A. 253. The act in force at the time was that of April 22, 1905, P. L. 297, amending prior acts, the first of which was the Act of 1855, P. L. 430. It provided: "Section 7. That it shall be lawful for any person desirous of adopting any child as his or her heir, or as one of his or her heirs, to present his or her petition to such court in the county where he or she may be resident, declaring such desire, and that he or she will perform all the duties or [of] a parent to such child; and such court, if satisfied that the welfare of such child will be promoted by such adoption, may,

---

[2] The adoption statutes in the various states are anything but uniform in their provisions, as will appear by an examination of the text and supporting references in Effect of Adoption, 2 C. J. S., page 446 et seq. and Right of Inheritance, 1 Am. Jur., page 654 et seq. In this commonwealth prior to the constitution of 1874, adoption might take place (a) under the Act of 1855, P. L. 430; (b) by deed recorded pursuant to the Act of April 2, 1872, P. L. 31, considered in *Evans's Estate,* 47 Pa. Super. Ct. 196; (c) by special Act of Assembly. These special acts varied in form as appears by comparison of that considered in *Com. v. Ferguson,* 137 Pa. 595, 20 A. 870, with, for example, the special Act of March 15, 1847, P. L. 388. This method, (c), passed out with the constitutional provision against special legislation. The provisions of the Act of 1855 have been amplified into the present system considered with our distribution statutes. The Act of April 2, 1872, P. L. 31, was repealed in 1925, P. L. 127, 129, 1 PS section 1 et seq. as amended.

See, also, the valuable paper by A. J. White Hutton: Concerning Adoption and Adopted Persons as Heirs in Pennsylvania, 42 Dick. L. Rev. 12.

with the consent of the parents or surviving parent of such child; . . . decree that such child shall assume the name of the adopting parent, and have all the rights of a child and heir of such adopting parent, and be subject to the duties of such child, of which the record of the court shall be sufficient evidence: Provided, That if such adopting parent shall have other children, the adopted shall share inheritance only as one of them, in case of intestacy, and he, she or they shall respectively inherit from and through each other, as if all had been the lawful children of the same parent."

It will be observed that the Act authorized adoption by "any person[3] desirous of adopting any child as his or her heir, or as one of his or her heirs . . . with the consent of the parents or surviving parent of such child," and provided that the decree should confer on the child "all the rights of a child and heir of such adopting parent. . . ." The adoption statute and section 16 of the Intestate Act must be construed together in ascertaining the resulting relations.

Dr. Fisher's petition set forth that he was "desirous of adopting D. Edward Robison, a child of William Robison and Mary H. Robison of the County of Fulton as one of his heirs . . ."; it was not a joint petition,[4] though we do not now consider whether Mrs. Fisher could adopt her own son.[5] At the foot of the petition her consent appears in this form and in these words: "The consent ———————— Mary H. Fisher." It cannot be treated as a joint petition as in *Peterson's Estate,* 212 Pa. 453, 61 A. 1005, where it appeared that joint action was intended by both petitioners and also by the court.

The decree of adoption stated: "and the Court being satisfied upon due consideration that the welfare of the said D. Edward Robison will be promoted by being

---

[3] Compare *Marshall v. Marshall,* 196 Cal. 761, 239 Pac. 36.

[4] A distinction noted in *Nulton's Appeal,* 103 Pa. 286, 296.

[5] Compare *Province's Estate,* 4 D. R. 591.

adopted as his child and as one of his heirs, with the consent of his mother, decree that the said child shall assume the name of D. Edward Fisher and have all the rights of a child and heir of the said Dr. D. E. Fisher and be subject to the duties of a child."

We have, then, a minor adopted by Dr. Fisher, and not by him and the child's mother, though she happened to be petitioner's wife. All she did was to comply with the statute by consenting. Under section 16(b) the adopted child then became a member of the family of Dr. Fisher. For purposes of inheritance, the statute said, "The adoptive relatives of the person adopted shall be entitled to inherit and take from and through such person, *to the exclusion of his or her natural parents,* grandparents, and collateral relatives."[6] The judgment of the learned court below gave no effect to the provision expressly preventing inheritance by the child's "natural parents,"[7] and, instead, providing that the "adoptive relatives" shall inherit from and through him.[8]

---

[6] *Heidecamp v. Jersey City, etc., Ry. Co.,* 69 N. J. L. 284, 55 A. 239, refers to statutes which do not contain such excluding provision.

[7] There was a time when our law permitted the natural parents to inherit *(Com. v. Powel,* 16 W. N. C. 297, 1885) but this was "a state of the law altered by the Act of April 13, 1887, P. L. 53, in part, and fully by section 16(b) of the Intestate Act of 1917": *Russell's Estate,* 284 Pa. 164, 168, 130 A. 319.

[8] In a well considered opinion, the learned President Judge of the Orphans' Court of Washington County, in dealing with section 16, said: "Furthermore, as already mentioned, the statute provides that such adopted person shall not be entitled to inherit from his natural ascendants or collateral relatives, and, moreover, that such blood ascendants and collateral kindred shall be excluded from inheriting from or through such adopted person. The statute expressly stipulates, however (in the clause closing section 16), that such provision shall not interfere with the inheritance rights of the adopted person's surviving spouse or issue. The law, therefore, contemplates that there shall be no disturbance of the mutual inheritance rights existing between or among an adopted

As the Intestate Act provides that the natural parent shall not inherit from the adopted child, is that statutory prohibition nullified, and a right to inherit created, by the fact that at the time of adoption by Dr. Fisher, and until the divorce, defendant was Dr. Fisher's wife? By the adoption, he transferred the child from the class in which it had been, i. e., one of Mrs. Robison's three children, and conferred on it the status (which resulted from the adoption and distribution statutes) of his child as the adopting parent. If we should now assume that, prior to the divorce, defendant could have been regarded as an adoptive relative within the meaning of the statute, that relation was completely severed by the divorce. At the time of Dr. Fisher's death, when the land vested in the adopted son, defendant, even on the proposed assumption, was not an adoptive relative within the terms of the statute. Defendant at that time sustained no relation to him; the family relation with her had been severed by her desertion and the divorce; the family then consisted of Dr. Fisher and his adopted son. At the son's death, intestate, his successor in title to the land was appointed by the Intestate Act, which designated his adoptive relative, the plaintiff, as the next

person and the latter's surviving spouse and descendants; the effect of the adoption being merely to give such adopted person, in lieu of his natural ascendants and collateral heirs, a new set of such relatives, to wit, adoptive ascendants and adoptive collateral kinsmen; the law contemplating that such adopted person shall have but one set of ascendants and collaterals. Now, were we to hold that Della Elizabeth Thomas, the adoptive granddaughter, could not succeed her deceased father in his inheritance rights in her adoptive grandmother's estate, she would, by our actions, be left in a most unfortunate and regrettable position; for her father's adoption has deprived her of all hope of ever inheriting through him anything whatsoever from his natural ascendants or natural collateral heirs. Such a ruling would leave the minor deprived of all paternal ascendants and collateral kinsmen, both natural and adoptive. Surely the lawmakers had no reason, and could not have intended, to inflict such an unwarranted hardship on the issue of adopted persons": *Thomas's Estate,* 2 D. & C. Rep. 89, at page 97.

312

taker "to the exclusion of his . . . natural parents." In *Cave's Estate,* 326 Pa. 358, at p. 366, 192 A. 460, we said that this section "severs the child from his natural family tree and engrafts him upon that of his new parentage 'for *all* purposes of inheritance.' "

The judgment is reversed, and the record is remitted for the entry of judgment in accord with this opinion.