## Dreer Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*John E. Walsh* and *Lewis E. VanDusen, Jr.,* of *Drinker, Biddle and Reath,* for exceptant.. . .. ..

*Thomas S. Weary* of *Duane, Morris & Heckscher* and *Nicholas R. Doman,* contra.

SAYLOR, J., December 23, 1960.—The issue to be determined is whether a person adopted in Pennsylvania may succeed as heir to her adoptive father in distribution of that portion of the estate of his sister,

a domiciliary of France, as to which there is an intestacy.

Augusta N. Dreer, a long-time resident of France, died there on July 29, 1954, leaving a last will and testament dated June 11, 1945, which, with three codicils thereto, was probated by the Register of Wills of Philadelphia County on August 26, 1954. In proceedings involving inheritance tax liability, this court decided that decedent was domiciled in France. Actually, the estate accounted for consists of personalty located in Philadelphia.

By her will, testatrix bequeathed four tenths of her residuary estate to a grandnephew and a grandniece in equal shares and six tenths to their mother, Margaret Greble Greenough, the daughter of Mary D. Greble, a deceased sister of testatrix. Mrs. Greenough predeceased Miss Dreer, having died in 1951. There being in French law no anti-lapse statute, an intestacy as to the six tenths resulted.

Florence Mary Dreer Hessenbruch claims a one-half share of the six tenths as the only child and heir of William F. Dreer, who died in 1918, predeceasing decedent, his sister. Mrs. Hessenbruch at the age of six weeks became a member of Mr. Dreer's household and on reaching age 20 in 1913 was formally adopted by him in proceedings in the Common Pleas Court of Delaware County. Marie Anne Greenough and William Greenough, 2nd, the children of Margaret Greble Greenough, contest the claim because they contend that under the laws of France an adopted child cannot inherit from a collateral relative.

In his adjudication the learned auditing judge awarded the six tenths of the residuary estate to the grandnephew and grandniece. Mrs. Hessenbruch has filed exceptions to this ruling.

It is undisputed that decedent having been domiciled in France her estate passes under the law of that

country. It is also undisputed that Mrs. Hessenbruch was the legally adopted child of decedent's brother, William Dreer; that her status as such is recognized in France and that French courts will accord such status the same incidents, including inheritance rights, which French law attached to the status created by adoption under the law of France as of the date of decedent's death.

There remains in dispute the effect of such status when its holder seeks to inherit as heir to a collateral relative of a decedent under French law.

At the audit Claude Lewy, Esq., for claimant, and Armand Gregoire, Esq., for the grandnephew and grandniece, testified as qualified experts on the French law of adoption and inheritance. On many points they were in full agreement. It was only on the narrow point as to what portion of the French law was applicable that they were in disagreement.

It was agreed that in France on decedent's death in 1954 the law of adoption in effect was contained in the Civil Code originally enacted in 1804 and from time to time amended or supplemented. Translation of the various articles of the code were made a part of the record. Title 8 of the "Code Civil", entitled "Adoption and Legitimating Adoption-Law of July 29, 1939", contains articles 343 to 370, inclusive. Under the heading, "Chapter I Adoption", appear articles 343 to 367, inclusive; under the heading, "Chapter II Legitimating Adoption" appear articles 368 to 370, inclusive.

It was further agreed that in general the articles of the present chapter I adoption law were in effect in 1913, when claimant was adopted, and that chapter II was added by executive decree in 1939, and by action of the French Assembly in 1941.

The experts agreed that, as William Dreer predeceased testatrix, Mrs. Hessenbruch, as his adopted

child, cannot take any part of his sister's residuary estate under chapter I, for the reason that article 356 thereof prohibits it. The article reads:

"The adoptee and his legitimate descendants do not acquire any rights by succession in the property of the relatives of the adopting parent. But they have upon the succession of the adoptive parent or parents the same rights as legitimate children or descendants would have."

As a matter of fact, claimant argues that under chapter I there is no complete substitution of new parents for natural parents and, since such substitution is the very foundation of modern adoption in Pennsylvania and elsewhere generally, claimant cannot be considered as coming under that chapter.

Hence, she seeks to qualify under chapter II entitled "Legitimating Adoption", whereby the adopted child passes through society as the lawful child of the adopting parents. Article 370, enacted on August 8, 1941, provides:

"The child being legitimated by adoption ceases to be a member of his or her natural family, except as to the marriage prohibitions provided for in Articles 161, 162, 163 and 164 of this Code. He or she shall have the same rights and obligations as if he or she were issue of the marriage."

Claimant's expert stated that "Legitimating Adoption" was part and parcel of the adoption law, the emphasis being on adoption and not on legitimation and that chapter II in no way alters or affects Mrs. Hessenbruch's status. It was Mr. Lewy's opinion that chapter II's only effect was to remove any public policy considerations based upon the breaking of family ties by adoption which might have prevented the recognition and giving of full effect to her status in France prior to 1939.

Chapter II was enacted to take care of children harmed by the war and its provisions are applicable, at least to French children, only to those who are under five years of age and were abandoned by their parents or whose parents are unknown or deceased. Mrs. Hessenbruch's parents were dead when she was adopted in 1913, but she was then 20 years old. The suspension of article 368 which limits adoptions to children under five years of age for children entrusted by a Welfare Department or by a charitable institution having the general guardianship over them is not applicable to Mrs. Hessenbruch. She lived with her adoptive father from the age of six weeks and was under no other guardianship.

Besides, chapter II has no retroactive effect, and it does not apply to French adoptions generally. The law governing such adoptions, namely, articles 343 to 367 of chapter I, remained in full force and effect after the enactment of chapter II. Incidentally, article 344 was amended on the very day of that enactment.

Since, by article 368, legitimation by adoption is permitted only in favor of a specific class of children, it can apply only to those adopted under it, and they alone can enjoy the rights it confers. Both parties agree that such at least is the case with French children. However, claimant contends that a French court would characterize her adoption as a chapter II adoption because the status created by the Pennsylvania decree was equivalent to that created by a chapter II adoption.

Claimant's position therefore amounts to this: She seeks to enjoy the rights granted a French child adopted under chapter II, or, failing that, to have her status characterized as, or to entitle her to acceptance as, the equivalent of a natural child of William Dreer for the purpose of inheriting from the estate of his sister.

The agreement of the parties that French courts will look to the law of other jurisdictions to determine the status of persons residing in such jurisdictions does not go beyond the establishment of status. So, the question here to be determined is not—What is claimant's status? but rather, What rights under the law of France does that status give to claimant?

The experts agree that under French law there is a distinction between status and capacity, and a difference between the capacity of exercise and the capacity of enjoyment. The latter capacity in this case is the capacity to enjoy or receive an estate. Once the French courts or the French law has admitted that a child is an adopted child, regardless of the rules under which it has been adopted, it is treated as an adopted child under the rules governing adoption in France.

The parties are in agreement that in France claimant has the status of an adopted child. They do not agree as to what rights of enjoyment that status gives her as claimant to an inheritance under French law. They have not produced any cases of the French courts that are applicable here. Those cited do not involve an adoptee's inheritance from anyone other than the adopter. Mr. Gregoire testified that the question of an adopted child's inheriting from a collateral relative has never arisen in France because article 356 quite clearly establishes the public policy of France that only the adopter is involved in the adoption, and the adoptee can inherit from his estate alone.

Chapter 5 of the Restatement of Conflict of Laws, §119, under the subject, "Status", defines it as a "legal personal relationship, not temporary in its nature nor terminable at the mere will of the parties, with which third persons and the state are concerned." The tentative draft of the new restatement provides under section 119(a) as follows:

"The law of a single state determines the legal category or status to which the person belongs. This status remains the same during his travels from state to state. On the other hand, the incidents arising under the status are likely to vary since they will often depend upon the law of the state where they are sought to be enjoyed."

The tentative draft then gives this illustration:

"2. A, who was adopted by B in state X, claims in state Y an intestate share in the estate of B's brother, C. Under the local law of X, an adopted child enjoys rights of inheritance from a collateral relative of his adoptive parents; he has no such rights under the local law of Y. Although A will be recognized in Y as the adopted child of B, he will not be permitted to share in C's estate."

That is precisely this case. If Mrs. Hessenbruch has no right under the law of France to inherit as an adopted child from a collateral relative, she cannot prevail, no matter what right of inheritance she has in Pennsylvania.

Subsection 2 of §120 Restatement of Conflict of Laws, 2nd tentative draft no. 4, repeats in substance section 119 (a) above, and adds:

"Unless to do so would be contrary to the strong public policy, the forum will accord the same incidents within its borders to a foreign status as it would to a similar status created by its own local law."

Section 305 of the Restatement of Conflict of Laws, entitled "Adopted Child as Distributee", reads:

"A person who has been made an adopted child will be treated for purposes of distribution as if he were a natural-born legitimate child of his adoptive parent if the law that regulates distribution gives such effect to adoption.

"Comment (c). The law of the state of the decedent's domicile determines whether an adopted child

can take a distributive share from or through or transmit it to or through a collateral relation."

Clearly, if claimant is to prevail she must point to a law of France entitling her as an adopted child to share in the estate of her adoptive father's sister. Admittedly, chapter I, article 356, denies her that right. Admittedly also, claimant could not at any time have qualified as an adoptee under articles 368 to 370, chapter II.

Chapter I is the basic adoption law of France, and has been such since 1904. While the prohibition of article 356 is not repeated in chapter II, and that chapter permits a child adopted thereunder to inherit from its adoptive parent's collateral relative, it cannot possibly relate to claimant's adoption in 1913 for the reasons above given.

The articles of chapter II do not alter or abrogate the provisions of the basic adoption law which continued in full force and effect after 1939. Hence, the incidents of claimant's status as an adopted child are to be determined only by the provisions of chapter I of the French Civil Code and cannot be determined otherwise. There is no other adoption law in France.

In this connection, Mr. Gregoire stated that it is inconceivable for the adoption status of a person adopted under French law prior to 1941 to change in any manner after the enactment of the 1941 law. There was no intervening legislation which changed the status of a person adopted prior to that date. An adopted person's status is fixed as of the date when the adoption takes place. Consequently, a person adopted prior to 1941 under Pennsylvania law would have the right to inherit from the estate of an adopter but from no other estate. The basis for this result is that the adopter may dispose of his own estate and enlarge the beneficiaries thereof to include an adopted child, but he could not foist such a child on his rela-

tives. Mr. Gregoire stated that there is, and could be, no case in France treating of a situation like this and denying or granting the right of an adopted child to inherit from a collateral relative.

Claimant next contends that she is entitled to take because in Pennsylvania the laws governing inheritance equate the status of an adopted child with that of a natural-born child and she can inherit from the collateral kindred of her adoptive parents: Cave's Estate, 326 Pa. 358 (1937). Were the issue to be determined under such law, claimant would prevail. But French law rules here. If Pennsylvania inheritance law were applicable, there would be no intestate estate to distribute, because under our anti-lapse statute the children of Mrs. Greenough, decedent's niece, would have been awarded the bequest given to her. Claimant would appear to claim the benefits of Pennsylvania law given an adopted child but to repudiate the same law as to its anti-lapse features.

Pennsylvania adoption law is applicable here; its inheritance laws are not applicable. The distinction between the status and the incidents of status of an adopted child is accepted by the courts of Pennsylvania. In Zoell's Estate, 345 Pa. 413 (1942), a child adopted in New Jersey was denied the right to inherit from the estate of a natural collateral relative domiciled in Pennsylvania because the Intestate Act of June 7, 1917, P. L. 429, sec. 16(*b*) provided:

"Adopted persons shall not be entitled to inherit or take from or through their natural parents, grandparents, or collateral relatives, . . ."

Under New Jersey adoption law the decree of adoption ended all rights, etc., between the child and her parents, excepting the rights of inheritance. The adoptee claimed one half of the estate of her natural uncle whose domicile was Pennsylvania. In his opinion

sustaining the lower court which had refused the claim, Chief Justice Schaffer said, pages 414, 415:

"We recognize her status, as an adopted child of her foster parents, but our Intestate Act says that she, like all other adopted children, cannot take anything from a natural collateral relative. A New Jersey decree, or a statute of that State, to which the decree gives effect, cannot alter our positive law, . . . What we are dealing with is a question of descent, not one of status."

There follows a quotation from the Restatement of Conflict of Laws, §305(*b*):

"If the law of the state of the decedent's domicil does not allow an adopted child to take a distributive share, he cannot do so, although the law of the state of adoption or of the state where a chattel is would allow him to take."

A situation almost identical to that in Zoell's Estate, supra, arose in Crossley's Estate, 135 Pa. Superior Ct. 524 (1939). In his well-reasoned opinion Judge Hirt said, at pages 527 and 528, quoting 73 A. L. R. 973:

" 'This is a question of descent, and not one of status, and as such will be governed by the lex rei sitae or lex domicilii decedentis.' "

The Pennsylvania Wills Act of April 24, 1947, P. L. 89, greatly expanded the rights of adopted children who can now inherit from kindred of their adoptive parents even though the legislation so providing is strictly construed because the "call of the blood" is one of the most firmly rooted instincts of human nature: Howlett Estate, 366 Pa. 293 (1951). And so claimant comes into court or presents herself to the law of France as one possessed of the "quality" of the Pennsylvania adoptive relationship in order that she might be accepted as the equivalent of a "natural born

legitimate child" of William Dreer. She would have a court applying French inheritance law ascribe to her the rights granted such a child by the State of her adoption and thereby gain an award which French courts could not grant nationals of France. Were an estate subject to French inheritance law to be distributed under the inheritance laws of the domicile of a foreign claimant, there would be established the practice of determining French inheritance rights in accordance with foreign law regardless of the situs of the estate or the domicile of decedent. There would result a multifariousness of decisions and foreigners would receive awards of interests in French estates which under the laws of France its courts must deny its own citizens and residents.

Clearly, only French law is applicable in determining the incidents of claimant's status. Counsel's efforts to interpret that law as enlarging her rights of inheritance are not supported by any case law. In French decisions brought to the attention of the auditing judge, only the estate of the adoptive parent was involved.

In the so-called Indian case decided in 1931 by the Court of Cassation and reported in Cassation Requetes D. P. 1931, 1, 1932, the court admitted the status of an adopted child of decedent but held it could not inherit from him because he had legitimate children. That conflicted with French public policy. The question of inheritance from collaterals never came up.

In the so-called Russian case decided in 1946, Loreol v. Boncourt, reported in J. C. P. 1947, paragraph 3391, a Russian living in France had a child adopted by him in Russia where adoption laws differed from those in France especially in the circumstance of age. Claimant, Mrs. Loreol, was found to be the only descendant of the deceased adopter, and it was held that she could

not be deprived of her right to inherit in France. But, again, there was not involved the claim of a right to inherit from a collateral.

In the Bulkley Case, citation D. P. 60.1.57, a British subject was divorced in England at a time when divorce was not allowed in France. He married a French woman there and died a domiciliary of France. What Mr. Lewy designated as the Supreme Court of France held that the foreign divorce be given full faith and credit. Although it is not clear from the record, apparently the second wife was entitled to inherit from her husband. No collateral relationship was involved.

The concept of forced heirship, the keeping of the inheritance within the blood lines of a family, is a basic feature of the French law of inheritance, and the policy against disinheritance of lawful descendants in France is so strong that any testamentary disposition is invalid to the extent that it reduces the reserved share of descendants. We agree with Mr. Gregoire that a French court would not permit an adopted child, other than one adopted after 1931 under chapter II, to inherit from a collateral relative, despite the fact that the inheritance laws of the adoptee's jurisdiction, in this case Pennsylvania, so permit.

Counsel have submitted comprehensive briefs containing references to the writings of many authors competent in the field of Conflict of Laws and of private international law. They also include interesting analyses of the Roman law of adoption, known as adoptio plena and adoptio minus plena, and of the French ordre public which is the principle of confining inheritance to those in the family blood lines. It is not necessary to consider or discuss these matters in resolving the issue before us. Suffice it to say, whatever the source of the theory of French adoption law, it is clear to us that under it a child wherever and

whenever adopted is not entitled to inherit from a collateral relative unless such child was adopted under and in full compliance with the provisions of chapter II which provisions clearly relate to a specific situation that is in no way similar to that in which claimant here finds herself.

We conclude therefore (1) that Mrs. Hessenbruch does not qualfy as a child adopted under the legitimation adoption law of France, under which law alone an adopted chi⹂d could inherit from a collateral relative of its adoptive parent, and (2) that there is no other law of France entitling her to such inheritance.

For the reasons set forth, we are of opinion that the learned auditing judge did not commit error. The exceptions to his adjudication are dismissed and the adjudication is confirmed absolutely.

### Dissenting Opinion

SHOYER, J. (dissenting), December 23, 1960.—A court, trained in the common law, is asked by one adopted under our statutes to distribute property of a foreign decedent pursuant to the code of the Roman law jurisdiction where that decedent was domiciled. Because of a dearth of precedents, it is a task attended with no little frustration and an end result doomed to give something less than complete satisfaction.

Decedent's death is the critical date. The heirs of the blood concede that as of that time, to wit, July 29, 1954, a child adopted in France under chapter II could inherit through her adoptive parent, who predeceased his collateral relative, the French decedent.

Mrs. Hessenbruch, claimant, whose parents died within two weeks of her birth, was a member of the household of decedent's brother and his wife from the age of six weeks. From the outset, she was treated as their own child. On December 18, 1913, when she was 20 years of age, this relationship was formalized by

an adoption decree of the Court of Common Pleas of Delaware County.

No close precedent under French law has been cited. Respectable legal authority, however, holds that differences in the adoption laws as to the conditions or requirements with respect to age of the parties, residence periods, consents necessary, common religion and similar details, are no bar to conferring upon foreign adopted children the same incidents, including inheritance rights, which are accorded to locally adopted children: Restatement, Conflict of Laws, §§142, 143, 305; Taintor, Adoption in the Conflict of Laws, 15 U. of Pitts. L. R. 222, 253, 254 (1954) ; Kennedy, Adoption in the Conflict of Laws, 34 Can. Bar Rev. 507 (1956).

The opposing French experts agree that France recognizes the status of a foreign adoptee. There is no statutory prohibition against a foreign adoptee inheriting through a collateral heir. Nor is there any case law which professes a public policy contrary to such inheritance.

What reason is there advanced to preclude the adoptee from inheriting? Mainly that Mrs. Hessenbruch was much past the age of five, when France in 1941 enacted chapter II which permits adoption only of children under that age. One might just as well say that she is ineligible to inherit under chapter II because she never applied for adoption under that statute. Or, more to the point, that she is not a French national duly adopted under the provisions of French law.

Admittedly, Mrs. Hessenbruch could not have inherited from a collateral under Pennsylvania law until passage of the Intestate Act of June 7, 1917, P. L. 429, 439, or the earlier Act of May 28, 1915, P. L. 580, but clearly the subsequent legislation broadened her

original 1913 status by extending her inheritance rights: Cave's Estate, 326 Pa. 358 (1937).

The majority confuses the conditions of adoption under French law with the incidents of the status of the foreign adoptee. The result effectively denies that recognition of foreign status which is an accepted principle of the conflict of laws followed in France, according to the testimony of both experts. Insistence upon compliance with the requirements of the local law is the equivalent of nonrecognition of the foreign status. Only where those local requirements are strongly expressive of public policy, should their observance be insisted upon.

An illustration may be taken from the marriage laws. Pennsylvania would recognize a foreign child marriage performed without parental consent even though our own laws require such consent. We would not recognize, however, a polygamous marriage or an incestuous marriage, though lawful in the foreign jurisdiction where performed. But although our statute prohibits marriage of first cousins, our public policy is not offended by the evasive action of two of our own citizens crossing over to a foreign state for the sole purpose of having the marriage performed where the law did not prohibit it: Schofield v. Schofield, 51 Pa. Superior Ct. 564. The distinction, as pointed out by the court, is that a first cousin marriage is prohibited for eugenic reasons only, while a union between closer blood relatives would, in addition, be offensive to public morals.

Similarly, there is nothing in Mrs. Hessenbruch's status which is offensive to the public policy of France as expressed in chapter II. The age restriction of five years is not absolute, but subject to extension where the child is living in the home of its would-be adoptive parents who have not yet reached the required age of 40. Similarly, Mrs. Hessenbruch was raised from

infancy by her adoptive parents although formal adoption was postponed until she was 20 years old. It could have been decreed under our law and the existing circumstances long before she reached five years of age.

Inheritance by lineal descendants of decedent is not involved in this case. There never were any.

In my opinion, Mrs. Hessenbruch is entitled to an intestate share as a first cousin of the Greenoughs and the exceptions should be sustained. Hence, I dissent.

Lefever, J., joins in this dissent.