## Marriage of MEW and MLB

Before McKenna, Adm. J., Zavarella and Boyle, JJ.

*Leo P. Hajdukiewicz,* for applicants.
*John M. Duff, Deputy Attorney General,* contra.

BOYLE, *J.,* April 12, 1977—The question to be determined on this record is whether two persons who are unrelated by blood but who become brother and sister by reason of an adoption of the male applicant by the natural mother of the female applicant may lawfully obtain a license to marry under the provisions of The Marriage Law of August 22, 1953, P.L. 1344, sec. 5, as amended, 48 P.S. §1-5. The issue comes before the court on a certification of the question by the register of wills who, as ex officio Clerk of the Orphans' Court Division, has declined to issue a marriage license to these applicants. See Act of June 30, 1972, P.L. 508, sec. 2, 20 Pa. C.S.A. §907. The register's certification was considered by the court en banc on March 7, 1977, and the case has been referred to Boyle, J., for hearing and determination.

A written stipulation of facts has been entered into and filed by counsel for the applicants and the Deputy Attorney General of the Commonwealth to

whom notice was given and who opposes the application.

The agreed facts are as follows:

1. The male applicant MEW is presently 20 years of age, having been born on May 24, 1956, at Pittsburgh, Allegheny County, Pa.

2. The female applicant MLB is presently 23 years of age, having been born on August 3, 1953, at Tallahassee, Fla.

3. Although the male applicant is residing at State Park, Pa., his domicile is . . . Monroeville, Allegheny County, Pa. 15146.

4. The female applicant's domicile and residence is . . ., Wilkinsburg, Allegheny County, Pa. 15221.

5. The natural parents of the male applicant were MHW and AJKW, who were married to one another at the time of the male applicant's birth.

6. The natural parents of the female applicant were MEB and SEMB, who were married to one another at the time of the female applicant's birth.

7. Neither the applicants nor their ancestors are related to one another by any blood relationships. The family of each is a separate and distant blood line.

8. As children, the applicants grew up separately and apart from one another.

9. The male applicant was born and raised at Monroeville, Allegheny County, Pa.

10. The female applicant was born in Tallahassee, Fla., lived there until she was 2½ years old, moved with her family to the Squirrel Hill section of Pittsburgh and then to the Borough of Monroeville, Pa.

11. The female applicant's father, MEB, died on September 9, 1970, when the female applicant

was 17 years of age and living together with her natural parents.

12. The male applicant's mother, AJKW, died on January 28, 1971, when the male applicant was 14 years of age and living together with his natural parents.

13. On June 19, 1971, the surviving parent of each applicant, MHW and SEMB, married to each other at Monroeville, Pa., before Justice of the Peace Salton.

14. On June 19, 1971, the female applicant, at the age of 17 years, married TCC at Pittsburgh, Pa. The said TCC was a stranger to both the W and B families.

15. On June 19, 1971, the mother of the female applicant went to live with her husband, the father of the male applicant, at . . ., Monroeville, Pa. 15146.

16. On June 19, 1971, the female applicant separated from her natural mother and went to live with her husband, the said TCC.

17. On June 23, 1972, more than one year after her marriage to the father of the male applicant, the mother of the female applicant filed a petition to adopt the male applicant, then 16 years of age, an older brother and two younger sisters, said older brother and younger sisters all being related to the male applicant by blood, in the Common Pleas Court of Allegheny County, Pa. at no. 320 of 1972.

18. On June 27, 1973, after hearing the Court of Common Pleas of Allegheny County, Pa., decreed that the children of MHW, which included the male applicant, became the adopted children of SEMW.

19. On March 7, 1973, because of serious domestic problems, the female applicant filed a

divorce action against her husband, the said TCC, in the Common Pleas Court of Allegheny County, Pa., Family Division, at no. . . ., . . . term 1973.

20. On July 16, 1973, after a hearing on June 28, 1973, the Court of Common Pleas of Allegheny County, Pa., Family Division, at the aforementioned number and term, decreed that the female applicant and her spouse, the said TCC, were divorced from the bonds of matrimony on the ground of the husband's indignities.

21. During a short period of time in 1973, the female applicant went to live with her mother at . . ., Monroeville, Pa. 15146.

22. In 1973, the female applicant moved from . . ., Monroeville, Pa., 15146 and into her own apartment in Wilkinsburg, Pa., where she continues to reside even at the present time.

23. The male applicant is a college student, in his junior year at Penn State University where he is majoring in accounting.

24. The female applicant received nurse's training at the Columbia Hospital School of Nursing and is presently a registered nurse.

25. At no time have the applicants ever looked upon each other as "brother" and "sister," but only as the offspring of different natural parents, which they are.

26. There is not now and there has never been any blood relationship of any degree between the applicants.

27. There is not now and there has never been any relationship of affinity between the applicants.

28. Both the natural father of the male applicant and the natural mother of the female applicant are in favor of the marriage between the applicants.

29. In August 1976, at the occasion of the marriage of the older brother of the male applicant, the applicants herein began a friendly relationship which has blossomed into a desire to marry.

The question is thus presented whether the legal relationship of brother and sister, created by the process of adoption, constitutes an impediment to the proposed marriage of these applicants who have filed their application for a marriage license on February 25, 1977, in the Marriage License Bureau of the Clerk of the Orphans' Court Division.

The Marriage Law, supra, provides in subsection (i), section 5 of the Act of August 22, 1953, P.L. 1344, as amended, 48 P.S. §1-5, as follows:

"No license to marry shall be issued by any clerk of the orphans' court:

". . .

"(i) To applicants within the prohibited degrees of consanguinity and affinity, which are as follows:

"Decrees of Consanguinity

"A man may not marry his mother.

"A man may not marry his father's sister.

"A man may not marry his mother's sister.

"*A man may not marry his sister.* (Emphasis supplied.)

"A man may not marry his daughter.

"A man may not marry the daughter of his son or daughter.

"A man may not marry his first cousin.

"A woman may not marry her father.

"A woman may not marry her father's brother.

"A woman may not marry her mother's brother.

"A woman may not marry her brother.

"A woman may not marry her son.

"A woman may not marry the son of her son or daughter.

"A woman may not marry her first cousin.

### "Degrees of Affinity

"A man may not marry his father's wife.

"A man may not marry his son's wife.

"A man may not marry his wife's daughter.

"A man may not marry the daughter of his wife's son or daughter.

"A woman may not marry her mother's husband.

"A woman may not marry her daughter's husband.

"A woman may not marry her husband's son.

"A woman may not marry the son of her husband's son or daughter."

In considering whether the legislative prohibition of a marriage of a blood brother and sister extends to and includes a brother and sister who are in this relationship by reason of an adoption, we must look to the spirit of the law as well as to its letter. A clear example of this appears in the Crimes Code in the Act of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §4302, which provides:

"A person is guilty of incest, a misdemeanor of the first degree, if he knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood. The relationships referred to in this section include blood relationships without regard to legitimacy, *and relationship of parent and child by adoption.*" (Emphasis supplied.)

The law of Pennsylvania has thus clearly made incestuous a marriage between a parent and child

by adoption, even though there is no relationship by blood between them. Such a marriage is prohibited obviously on the ground of public policy and decency and a violation of the legislative mandate in this instance involves the commission of a misdemeanor of the first degree.

The male applicant in the case at bar, together with a brother and two sisters, was adopted in this court by the mother of the female applicant on June 27, 1973. In accordance with the provisions of section 503 of the Adoption Act of July 24, 1970, P.L. 620, 1 P.S. §503, the decree of adoption provides that the male applicant and the other adoptees shall have ". . . all the rights of children and heirs of the adoptive parent and be subject to the duties of such children . . ."

The legal effect of an adoption is clearly expressed by Justice Allen M. Stearne in Schwab Adoption Case, 355 Pa. 534, 536, 50 A.2d 504 (1947), as follows:

"In Pennsylvania a valid adoption severs the child from its natural family tree and engrafts it upon that of its new parentage. Thereafter the child attains the status, in law, of a natural child of the adopting parents: Cave's Estate, 326 Pa. 358, 192 A. 460."

The policy of the law which welds an adopted child into the family unit of the adopting parent or parents is expressed by Chief Justice Jones in Tafel Estate, 449 Pa. 442, 452, 296 A.2d 797 (1972), as follows:

"The rule of construction we today recognize equates the rights of natural children and adopted children and executes the legislatively mandated equality so clearly and unequivocally expressed in the statutes of adoption, i.e., that the adopted per-

son 'shall have all the rights of a child and heir of ' the adopting parents."

In the light of the foregoing principles of law and there being no specific statutory prohibition of a marriage between two persons who are brother and sister by adoption, we come face to face with the proposition as to whether this relationship constitutes an impediment which bars the issuance of a marriage license in Pennsylvania.

The policy of the law of the Commonwealth is to impose upon adopted children all of the rights and duties of a natural child of an adoptive parent or parents. Correspondingly, an adopted child has imposed upon him or her all of the obligations and disabilities which accompany the relationship of parent and child.

In the case of In re Enderle Marriage License, 1 D.&C. 2d 114 (1954), the Orphans' Court of Philadelphia County authorized the issuance of a marriage license to persons who were first cousins by adoption. The opinion in support of the decree was written by President Judge Klein and Judge Lefever. It includes a learned discussion and traces part of the history of the impediments and restrictions which the divine law and the civil law have placed upon the right of human beings to marry. Although the Marriage Law of 1953, supra, proscribes a marriage between first cousins who are related by blood, the orphans' court held that consanguinity was not present in Enderle and ordered the issuance of the marriage license. In concluding the opinion the court wrote:

"We refrain, however, from expressing in this opinion our views with respect to marriage involving relationship by adoption closer than first cousins."

The hearing judge, in the case at bar, perceives the present application for a license to marry to be an entirely different problem than the one presented in Enderle, supra. Here, the applicants are brother and sister by reason of the male applicant's adoption by the mother of the female applicant. While the applicants did not live and grow up together in the same household from early childhood, they have, for at least part of their lives, lived together as brother and sister in the family residence of their respective parents. An important consideration in this case is the integrity of the family which the law has a duty to protect. To authorize and encourage marriages of brothers and sisters by adoption would undermine the fabric of family life and would be the antithesis of the social aims and purposes which the adoption process is intended to serve.

The hearing judge holds that an adoption imposes on an adopted child a constructive relationship with the natural children of his adoptive parent equal to a relationship by consanguinity. In these circumstances, the court is obliged to sustain the action of the clerk of the orphans' court division, who has refused to issue a marriage license in this case.

A decree will be entered in accordance with this opinion.

## CONCURRING OPINION

ZAVARELLA, *J.*, April 12, 1977—I agree with the result reached by Judge Boyle and join in his decree sustaining the refusal of the requested marriage license. Here, as in Enderle, 1 D.&C. 2d 114 (1954), there appears at first blush no reason to prevent the marriage of the above applicants

since their relationship arises from adoption and is not based on consanguinity. There are, however, other complex facets inherent in this matter, one of which concerned both Judge Boyle and Judge Klein, Judge Klein expressing his concern by stating that the sanctity of the home should be maintained and there should not be competition for sexual companionship between members of the same household or family, while Judge Boyle indicated that the duty of the law is to protect the integrity of the family with the law not encouraging marriages of brothers and sisters by adoption as this would undermine the family life and be antithesis of the adoption process purpose.

To this I would add my concern that if this license is granted, the marriage code will have preference over the adoption act. The adoption act makes the applicants brother and sister and, since a man may not marry his sister, to hold that the marriage code means only a man and his sister by blood, would make the adoption process meaningless for the purposes of marriage. A person should not be able to consent to an adoption, receive the benefits of an adoption and then pretend that the adoption does not exist or does not affect the family relationship, all for the purpose of obtaining a marriage license.

## DISSENTING OPINION

McKENNA, *ADM. J.*, April 12, 1977—This case is before us on exceptions by applicants to the court's refusal to direct the issuance of a marriage license to them.

The facts are stated in detail in the decision of the hearing judge and in a stipulation of facts by

the parties. They will, nevertheless, be repeated briefly here.

The above parties sought a marriage license from the clerk of the orphans' court division of this court. The application was refused. On appeal, a judge of the division affirmed the action of the clerk. The parties filed exceptions to the decision. The case was argued before the court en banc and briefs were filed. A majority of the court believes the decision of the hearing judge should be affirmed. I dissent for the reasons herein stated.

The marriage license was refused for the reason that the male applicant was adopted by the mother of the female applicant. The majority believes that the parties are, in law, brother and sister, and, for this reason may not marry.

MEW, male, was born on May 24, 1956. MLB, female, was born on August 3, 1953. There is no blood relationship between the parties nor are they related by affinity, i.e., marriage. As children, the applicants grew up separately and apart from each other.

MLB's father died on September 9, 1970, when MLB was 17 years of age. MEW's mother died on January 28, 1971, when he was 14 years old.

On June 19, 1971 the surviving parents of applicants were married to each other. On the same date, MLB, the female applicant, married TCC and left her mother's household to live with her husband.

On June 23, 1972, the mother of the female applicant filed a petition to adopt the male applicant. The petition was granted and by decree of this court dated June 26, 1973, MEW became the adopted child of the mother of MLB.

On March 7, 1973, MLB filed a complaint in di-

vorce against her husband. After hearing, this court at no. . . ., . . . . term, 1973, entered a decree of divorce from the bonds of matrimony.

During a short period of time in 1973, MLB lived in her mother's household. The exact extent of this visit is not revealed. The record does not show if MEW was then a resident of the same household but we presume that he was. He is now a junior in college at Penn State University.

In the same year, 1973, MLB moved from her mother's household into her own apartment where she now resides. She is a registered nurse and is practicing that profession.

In August of 1976, at the occasion of the marriage of the older brother of MEW, the applicants began a friendly relationship which has blossomed into a desire to marry.

The majority deny the parties the right to marry on the ground that the marriage "would undermine the fabric of family life and would be the antithesis of the social aim and purposes which the adoption process is intended to serve."

I do not believe that this would follow if a license were to be issued in the case at bar. Prior to the wedding above referred to, the parties were as strangers to each other. The fact that they lived in the same household for "a short period" in 1973 does not, in my judgment, make them "de facto" brother and sister. This is not a case where a male infant and a female infant were adopted and raised to maturity by the adopting parents in the same household. In a case of this nature, the reasoning of the majority might be applicable.

The parties are not related by blood or affinity. Therefore, there is in law no obstacle to their marriage.

The purpose of the adoption law is to provide a secure home and loving parents to a child not wanted, or abandoned by his natural parents. I do not believe it should be construed in such a manner as to prevent a marriage between two persons, who, I believe, are legally entitled to marry. Therefore, I dissent.

## ORDER OF COURT

Now, April 12, 1977, exceptions having been filed to the decree of this court dated March 17, 1977, after argument and consideration of briefs filed, it is

Ordered and decreed that said exceptions be and they are hereby dismissed.